**STATE of Tennessee, Appellant,**

v.

**Stephen Wade MOSIER, Appellee.**

Court of Criminal Appeals of Tennessee, at Nashville.

July 28, 1994.

---

Russel A. Church, Asst. Public Defender, Clarksville, for appellee.

Charles W. Burson, Atty. Gen. and Reporter, Charlette Reed Chambers, Asst. Atty. Gen., Nashville, and James W. Kirby, Dist. Atty. Gen. Pro Tem., Nineteenth Judicial Dist., Charlotte, for the State of Tenn.

## OPINION

WADE, Judge.

The State of Tennessee appeals the order of the trial court suppressing a confession made by the defendant, Stephen Wade Mosier. The single issue presented for review is whether the trial court erred by its determination that the defendant's constitutional right to counsel precluded the admission of the confession.

We affirm the judgment of the trial court.

On October 8, 1991, the defendant was indicted on three counts of aggravated rape. The charges were that the defendant, age 18, had accomplished digital, oral, and penile penetration of a victim under the age of 13. The alleged incident occurred June 5, 1991. A few days later, Officer Pat Vaden of the Montgomery County Sheriff's Department directed the defendant to come to his office for questioning. Because of threats made by the victim's father, the defendant arrived a day early seeking "protective custody." He

was placed in a locked holding cell for a time before being transferred to the interrogation room. As the questioning began, the defendant told Officer Vaden he "would like to talk to his attorney."

Officer Vaden had talked with the young female victim and the Department of Human Services before contacting the defendant and asking him to cooperate in the investigation. The officer testified that the defendant was not placed under arrest upon arriving at the sheriff's department and that the visit qualified as voluntary; although he described the defendant as "free to leave," that was not communicated to the defendant. He stated that when the defendant indicated that he "would like to talk to his attorney," he stopped the interview and placed a telephone call to Attorney Bill Cloud, then in private practice in Clarksville. Officer Vaden stated that the defendant talked to Cloud and received instructions as to how to proceed; he testified, however, that he was unaware of what those specific instructions were.

Cloud, who had been named an assistant district attorney general by the time of the suppression hearing, testified for the defense. Cloud knew nothing about the investigation before he received the telephone call but recalled that he had been "pretty emphatic" in directing the defendant not to talk further. He testified that when Officer Vaden asked for permission to interrogate the defendant, he said, "[A]fter I talk to him and know the facts, I will tell you ..., if I represent him—whether we might be willing to make another statement." The telephone conversation lasted three to five minutes or less. Later that day, Cloud learned from the defendant that the interrogation had proceeded in his absence. Formal arrest and arraignment had been arranged for the next day. Upon cross-examination by the state, Cloud testified that when Officer Vaden asked if he could get additional information from the defendant, he said, "[U]ntil I talk to him, I can't tell you that...." Other than that comment, he had no recollection of whether he had specifically directed Officer Vaden not to talk to the defendant.

The defendant, employed as a mechanic and with a high school equivalency diploma, had no prior record other than a speeding ticket and had never been interviewed by the police. He is single and lives with his parents. He testified that he was aware at the time Officer Vaden first called that the victim, a cousin by marriage, had made allegations of criminal conduct. After the complaint was made, the defendant decided that he could not return home because the victim's father "was looking for me to kill me." On the morning the defendant talked to Officer Vaden, his father had called him at work and directed him to turn himself in to the sheriff's office because "my uncle was leaving the house with a gun [and] ... might be coming after me." Because of that threat, the defendant went to talk to the officer a day earlier than had been previously scheduled. Upon his arrival at the sheriff's department, he was placed in a holding cell to await Officer Vaden; the door could not be opened from the inside. The defendant agreed that the officer read him his rights and he had signed a waiver form. The defendant testified that after about 10 minutes, he asked the officer to talk to a lawyer. The defendant had officer escort when transported to or from the holding cell, the interrogation room (which had an inside door handle), and the telephone area. He stated that Cloud told him not to say anything else and then asked to talk to the officer. He observed that the officer verbally agreed with "whatever Mr. Cloud was saying." The defendant testified that Officer Vaden then directed him back into the interrogation room where he signed another waiver. He claimed he was not free to leave. He said that he told Officer Vaden that his lawyer instructed him not to talk but that he questioned him anyway. Afterward, a Department of Human Services representative questioned the defendant. Then, he stated, Officer Vaden questioned him a second time. The defendant provided the officer with three separate, written statements. Although released for the night, the defendant was directed to return the next day for formal arrest and arraignment.

The defendant's father, Daniel Mosier, testified that he had sent his son to the sheriff's department for custodial protection. He

stated that he believed that "the [victim's] father was on the way to kill Stephen...." Mr. Mosier testified that on the day of the interview the defendant "was a wreck"; he had had little sleep and his eyes were blood-shot.

While observing some disputes in the evidence, the trial court acknowledged its role as the trier of the facts. After arguments, first, on whether the defendant was in custody and second, on whether constitutional safeguards had been abridged during the interrogation, the trial court took the motion to suppress under advisement in order to review authorities. Later, the court implicitly determined the defendant had been subjected to a custodial interrogation and otherwise found as follows:

> Given the testimony in this case, the Court finds that the evidence is insufficient to support a finding by the Court that the defendant initiated further communications with Deputy Vaden. Consequently, the defendant's motion is granted and the statements given by the defendant are accordingly suppressed.

The state initially contends that the defendant was not in custody at the time of his interrogation. The ultimate question, in our view, is whether he was "deprived of his freedom of action in any significant way." *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). The test to be applied is whether "a reasonable man in the suspect's position" would have believed himself to be "in custody." *Berkemer v. McCarty*, 468 U.S. 420, 442, 104 S.Ct. 3138, 3151, 82 L.Ed.2d 317 (1984). Our supreme court has used the terms accusatory and custodial stages interchangeably, yet acknowledges its "hairline" distinction with the investigatory stage. *Childs v. State*, 584 S.W.2d 783, 788 (Tenn.1979). In *State v. Morris*, 224 Tenn. 437, 456 S.W.2d 840 (1970), the totality of the circumstances test was found to govern the classification of the interrogation; the critical factors are as follows:

(1) the nature of the interrogator;

(2) the nature of the suspect;

(3) the time and place of the interrogation;

(4) the nature of the interrogation; and

(5) the progress of the investigation at the time of the interrogation.

*Id.* at 443, 456 S.W.2d at 842.

■ It is well-settled law that a suspect must be informed of his right to remain silent and his right to counsel. He may not be interrogated until he waives those rights. *Miranda*, 384 U.S. at 473–74, 86 S.Ct. at 1627–28. If at anytime a suspect asserts his right to counsel, the interrogation should end until an attorney is present. *See Fare v. Michael C.*, 442 U.S. 707, 717, 99 S.Ct. 2560, 2569, 61 L.Ed.2d 197 (1979); *Rhode Island v. Innis*, 446 U.S. 291, 297–98, 100 S.Ct. 1682, 1688, 64 L.Ed.2d 297 (1980).

In *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), the Supreme Court held as follows:

> [W]hen an accused has invoked his right to have counsel present during custodial interrogation, a *valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation* even if he has been advised of his rights.

*Id.* at 484, 101 S.Ct. at 1884–85 (emphasis added).

The principle in *Edwards*, barring interrogation until counsel has been made available to the suspect, has been extended to apply to circumstances in which a suspect is counseled by his attorney and the state thereafter reinstitutes questioning in the attorney's absence. *Minnick v. Mississippi*, 498 U.S. 146, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990). The rule is to ensure that "any statement made in subsequent interrogation is not the result of coercive pressures." *Id.* at 151, 111 S.Ct. at 489. This requirement is said to have "the virtue of informing police and prosecutors with specificity as to·what they may do in conducting custodial interrogation, and of informing courts under what circumstances statements obtained during such interrogation are not admissible." *Fare v. Michael C.*, 442 U.S. at 718, 99 S.Ct. at 2568. *See State v. Crump*, 834 S.W.2d 265 (Tenn.1992). It is "beyond dispute that a suspect's request for counsel must be honored...." *State v. Stephenson*, 878 S.W.2d 530, 547 (Tenn.1994).

This right to counsel is derived from the privilege against self-incrimination as protected by the Fifth Amendment to the United States Constitution and Art. I, § 9 of the Tennessee Constitution. In *Miranda,* the Supreme Court held that if a suspect "indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking, there can be no questioning." 384 U.S. at 444–45, 86 S.Ct. at 1612. Generally, a request for counsel must be given broad interpretation by the courts. *Michigan v. Jackson,* 475 U.S. 625, 633, 106 S.Ct. 1404, 1409, 89 L.Ed.2d 631 (1986). Presently, our supreme court ruled that Art. I, § 9 of our constitution is, in some respects, "broader and more protective of individual rights than ... the Fifth Amendment." *State v. Crump,* 834 S.W.2d 265, 268 (Tenn. 1992).

If a suspect makes an equivocal or ambiguous request for counsel, police may attempt to clarify the request but can do nothing more. *United States v. Fouche,* 833 F.2d 1284, 1287 (9th Cir.1987), *cert. denied,* 486 U.S. 1017, 108 S.Ct. 1756, 100 L.Ed.2d 218 (1988); *Nash v. Estelle,* 597 F.2d 513 (5th Cir.), *cert. denied,* 444 U.S. 981, 100 S.Ct. 485, 62 L.Ed.2d 409 (1979). Once an unequivocal request for counsel is made, however, any responses by the suspect "to further interrogation may not be used to cast doubt on the clarity of his initial request." *Smith v. Illinois,* 469 U.S. 91, 92, 105 S.Ct. 490, 491, 83 L.Ed.2d 488 (1984).

The findings of the trial judge at the conclusion of the suppression hearing are presumptively correct. Conclusions on questions of fact are binding on appeal unless the evidence preponderates otherwise. *State v. Stephenson,* 878 S.W.2d 530, 544 (Tenn.1994); *State v. O'Guinn,* 709 S.W.2d 561, 565–66 (Tenn.1986); *Graves v. State,* 512 S.W.2d 603 (Tenn.Crim.App.1973).

The trial court ruled that the defendant was the subject of a custodial interrogation. The right to counsel extends only to those suspects "in custody." Of equal importance, the trial court found as a matter of fact that the defendant did not initiate new communications with the officer after he had requested the benefit of counsel. There is evidence in the record to support these conclusions.

"A policeman's unarticulated plan has no bearing on the question whether a suspect was 'in custody' at a particular time." *McCarty,* 468 U.S. at 442, 104 S.Ct. at 3151. Each case must be judged upon its particular facts. Whether or not a suspect has been subjected to a "custodial interrogation" is controlled by its own facts and all of the circumstances must be taken into consideration by the judge in making that determination. *State v. Nakdimen,* 735 S.W.2d 799, 800 (Tenn.Crim.App.1987). Here, the investigation had focused upon the defendant as the prime suspect; the investigating officer had directed the defendant to come to the sheriff's department for questioning; the defendant, who was by himself, was placed in a locked holding cell to await interrogation; the defendant was escorted to the interview room by Officer Vaden and confronted with specific allegations; and, at the time, the investigation was complete except for the interrogation of the defendant. A central question is whether the suspect was "deprived of his freedom of action in any significant way." *Oregon v. Mathiason,* 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714 (1977). *See United States v. Beraun–Panez,* 812 F.2d 578, *modified,* 830 F.2d 127 (9th Cir.1987); *State v. Furlough,* 797 S.W.2d 631 (1990). By the application of the criteria utilized under the totality of the circumstances test, it appears that the trial court had a basis for its determination that the defendant was in custody.

The issue here is close. Yet the trial judge is permitted wide latitude discretion in determining whether a suspect is subject to a "coercive," "custodial" circumstance requiring adherence to the guarantees of the Fifth Amendment of the United States Constitution and Art I, § 9 of the Tenn. Constitution. *State v. Chandler,* 547 S.W.2d 918 (Tenn. 1977). Unless the evidence clearly preponderates against those conclusions, appellate courts may not intervene. Thus, this court is bound by a determination that the defendant was in custody absent a clear abuse of discre-

tion. *State v. Smith,* 868 S.W.2d 561, 570 (Tenn.1993).

Accordingly, the judgment was affirmed.

WHITE and WELLES, JJ., concur.