# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### May 7, 2002 Session

## STATE OF TENNESSEE v. MAURICE LASHAUN NASH

**Direct Appeal from the Circuit Court for Tipton County**
**No. 3933     Joseph H. Walker, Judge**

---

**No. W2001-01703-CCA-R3-CD  - Filed August 14, 2002**

---

The Appellant, Maurice Lashaun Nash, appeals his conviction by a Tipton County jury for facilitation of possession of marijuana, a schedule VI controlled substance, with intent to deliver, a class A misdemeanor.   On appeal, Nash raises the following issues for our review:  (1) whether the trial court erred by denying his motion to suppress, and (2) whether the evidence in the record is insufficient as a matter of law to sustain his conviction.  After a review of the record, we find plain error in the trial court's instruction to the jury charging the offense of facilitation, as this lesser offense was not fairly raised by the evidence.  Accordingly, Nash's conviction is reversed and remanded for a new trial upon the lesser offense of class A simple possession.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Reversed and Remanded.**

DAVID G. HAYES, J., delivered the opinion of the court, in which JERRY L. SMITH and ALAN E. GLENN, JJ., joined.

C. Michael Robbins, Memphis, Tennessee, for the Appellant, Maurice Lashaun Nash.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; Kim R. Helper, Assistant Attorney General; Elizabeth T. Rice, District Attorney General; and Ryan Brown, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

### Factual Background

On August 19, 1999, around 11:30 p.m., Tipton County Reserve Deputy Chris Smith, stopped a white four-door LTD traveling on Highway 51 in Brighton.  The vehicle was driven by Fidel Jefferson and occupied by two passengers, the Appellant and Lavena Adams, who were in the backseat.  Deputy Smith stopped the vehicle because he "could not read the drive-out tag, the expiration on the drive-out tag," which was displayed in the upper-left corner of the car window.

As Deputy Smith approached the rear of the vehicle, he was able to read the drive-out tag, which was valid. He also smelled "a strong odor of marijuana." At this time, the two windows on the driver's side of the vehicle "were up." Jefferson thereafter lowered the window to speak with Deputy Smith. Deputy Smith took Jefferson's driver license and returned to his vehicle "to check the license of the driver." While Smith was conducting the license check, Deputy David Graham arrived on the scene. Deputy Smith advised Deputy Graham "that [he] stopped the vehicle, that two subjects was in the back seat that popped up when [he] was approaching the vehicle, told him [he] had the license, [he] was checking the license on the subject, and that [he] had smelled the strong odor of marijuana." As Deputy Graham approached the passenger-side of the vehicle, he also could "smell the smell of marijuana." After Deputy Smith confirmed the status of Jefferson's driver license and returned to the stopped vehicle, he

> asked [Jefferson] if he would step out, advised him why [he] had stopped him, [gave] him a verbal warning to get the drive-out tag where it would be legible, [gave Jefferson's] license back and asked him if there was anything in the vehicle [they] should know about. And [Jefferson] advised there wasn't, and [they] asked him for consent to search the vehicle.

Jefferson consented. The Appellant and Adams were also removed from the vehicle, and the three of them were made to "stand at the rear of the vehicle." Deputy Smith stayed with the Appellant, Jefferson, and Adams, and Deputy Graham searched the vehicle. Upon search of the vehicle, Deputy Graham found a brown paper bag containing 443.8 grams of dry, packaged marijuana and drug paraphernalia "underneath the passenger's side of the front seat."

After discovery of the marijuana, Deputy Graham asked the Appellant, Jefferson, and Adams, "Does anybody know anything about the brown paper bag in the car?" The Appellant responded, "It's mine." Deputy Graham again inquired, "It's yours?" The Appellant responded affirmatively. At the time these statements were made by the Appellant, he was not under formal arrest and had not been Mirandized.

According to Adams, earlier in the evening, she, the Appellant, and Jefferson stopped at an apartment complex in Memphis. The Appellant and Jefferson went inside. The Appellant returned to the vehicle in "about five minutes." Jefferson exited the apartment "a minute or two" later carrying a brown paper bag, which he placed "under the armrest, so it was right in the middle of the car." Jefferson then started the vehicle and again began driving. Adams fell asleep until awoken by the police.

In March of 2000, the Appellant was indicted for possession of marijuana with intent to deliver. The Appellant filed a motion to suppress the evidence obtained as a result of the stop, which was denied on January 10, 2001. After a trial by jury, the Appellant was found guilty of facilitation

of possession of marijuana with intent to deliver.[1]  The Appellant received a sentence of eleven months and twenty-nine days to be served in the Tipton County jail.  The Appellant's motion for new trial was denied, and this timely appeal followed.

## ANALYSIS

### I. Motion to Suppress

The Appellant argues that "the trial court erred by overruling [his] motion to suppress." Specifically, he contends (1) that Deputy Smith was not authorized to effect a stop in order to read the drive-out tag on the car; (2) that the detection of the odor of marijuana did not provide a reasonable ground to request permission to search; and (3) Deputy Graham should have Mirandized the Appellant, Jefferson, and Adams before inquiring about the marijuana.

In reviewing a denial of a motion to suppress, this court looks to the facts adduced at the suppression hearing which are most favorable to the prevailing party. *State v. Daniel*, 12 S.W.3d 420, 423 (Tenn. 2000) (citing *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)).  In considering the evidence presented at the hearing, this court extends great deference to the fact-finding of the suppression hearing judge with respect to weighing credibility, determining facts, and resolving conflicts in the evidence. *Id.; see also State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001).  Indeed, these findings will be upheld unless the evidence preponderates otherwise. *Daniel,* 12 S.W.3d at 423.  In this case, the trial court denied the Appellant's motion to suppress, finding that:

> . . . the officers' testimony established that they had a lawful right to stop the vehicle, and after stopping the vehicle in a lawful manner, and right after, smelling the odor of what they believed to be marijuana, that gave the officers reasonable grounds for suspicion that some illegal activity was afoot, requested permission of the driver to search the vehicle, the driver gave permission, and therefore the motion to suppress on the basis of an illegal stop should be denied.

> Further, the Court finds that the general question asked of all three occupants who were standing at the rear of the vehicle, whether the bag belonged to any of them, was a type of question that did not require a Miranda warning, and that the statement that the defendant made, that the bag was his and that the contents of the bag was his, should not be suppressed.

> None of the occupants were under a formal arrest or restraint.  Mr. Nash was only placed under formal arrest or restraint, as indicated, after he acknowledged ownership for the brown bag and its contents of marijuana. The other occupants of the vehicle were not arrested.

---

[1]The trial court charged possession with intent to deliver, criminal responsibility for possession with intent to deliver, facilitation of possession with the intent to deliver, and simple possession.

## A. Stop

The State maintains that the Appellant does not have standing to contest the stop of Jefferson's car. Standing is ultimately a question of law, subject on appeal to *de novo* review against the backdrop of a trial court's factual determinations. *State v. Jackson*, No. M1998-00035-CCA-R3-CD (Tenn. Crim. App. at Nashville, May 5, 2000) (citing *United States v. Cooper*, 133 F.3d 1394, 1398 (11th Cir. 1998); *see also United States v. Gama-Bastidas*, 142 F.3d 1233, 1237 (10th Cir. 1998); *United States v. Ibarra*, 948 F.2d 903, 905 (5th Cir. 1991); *United States v. Blanco*, 844 F.2d 344, 349 n.4 (6th Cir. 1988); *United States v. Kuespert*, 773 F.2d 1066, 1067 (9th Cir. 1985)*; United States v. Smith*, 621 F.2d 483, 489 n.3 (2nd Cir. 1980)). Upon *de novo* review, we agree with the State and conclude that the Appellant does not have standing to challenge the validity of the traffic stop.

The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure . . . against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. Article I, Section 7 of the Tennessee Constitution similarly provides "[t]hat the people shall be secure . . . from unreasonable searches and seizures." Tenn. Const. art. I, § 7. In the context of these particular constitutional provisions, the so-called "standing" requirement is simply the rigorous application of the principle that the rights thereby secured are personal. *Rakas v. Illinois*, 439 U.S. 128, 139, 99 S. Ct. 421, 428 (1978). In other words, in challenging the lawfulness of a search or seizure under either the United States or Tennessee Constitution, a defendant must preliminarily establish that the disputed search or seizure intruded upon his own privacy or personal security. *See Daniel*, 12 S.W.3d at 424 (Tenn. 2000). Not all personal intercourse between policemen and citizens involves "seizures" of persons. When an officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen a "seizure" has occurred. *Terry v. Ohio*, 392 U.S. 1, 19 n.16, 88 S. Ct. 1868, 1879 n.16 (1968); *State v. Moore*, 776 S.W.2d 933, 937 (Tenn. 1989). Police questioning, by itself, is unlikely to result in a constitutional violation. *State v. Ashworth*, 3 S.W.3d 25, 29 (Tenn. Crim. App. 1999) (citation omitted). "Unless the circumstances of [an] encounter are so intimidating as to demonstrate that a reasonable person would have believed he was not free to leave if he had not responded, one cannot say that the questioning resulted in a detention under the Fourth Amendment." *Id.* After a review of the record, we conclude that the Appellant was not seized for constitutional purposes when Deputy Smith stopped the vehicle in order to determine the validity of the drive-out tag. Therefore, the Appellant does not have standing to challenge the stop of the vehicle.

## B. Search

The State also contends that the Appellant does not have standing to challenge the search of Jefferson's car. We agree. One who challenges the reasonableness of a search or seizure has the initial burden of establishing a legitimate expectation of privacy in the place or thing to be searched. *State v. Oody*, 823 S.W.2d 554, 560 (Tenn. Crim. App.), *perm. to appeal denied,* (Tenn. 1991). One who does not have such an expectation of privacy lacks "standing" to challenge the search. *See State v. Patterson*, 966 S.W.2d 435, 441 n.5 (Tenn. Crim. App. 1997). There are seven factors to be

considered when determining if a legitimate expectation of privacy exists: (1) ownership of the property; (2) whether the defendant has a possessory interest in the thing seized; (3) whether the defendant has a possessory interest in the place searched; (4) whether the defendant has a right to exclude others from that place; (5) whether he has exhibited a subjective expectation that the place would remain free from intrusion by the state; (6) whether the defendant took normal precautions to maintain his privacy; and (7) whether he was legitimately on the premises. *Oody*, 823 S.W.2d at 560.

Applying these factors, we conclude that the Appellant does not have a legitimate expectation of privacy in Jefferson's car. The Appellant was a passenger in the vehicle. He did not have any possessory interest in the car. There was no evidence that the Appellant exhibited a subjective expectation of privacy in the vehicle. Accordingly, we conclude that the Appellant does not have standing to challenge the search of Jefferson's vehicle.

## C. Miranda warnings

The Appellant contends that his admission claiming ownership of the marijuana should be suppressed because he was in custody at the time his statement was made and he had not been provided *Miranda* warnings. The Fifth Amendment protection against self-incrimination "privileges [a person] not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Minnesota v. Murphy*, 465 U.S. 420, 426, 104 S. Ct. 1136, 1141 (1984). In fact, the statements of an accused made during the course of custodial interrogation are inadmissible as evidence unless the State establishes that the accused was advised of certain constitutional rights and waived those rights. *State v. Anderson*, 937 S.W.2d 851, 853 (Tenn. 1996). Although we acknowledge an individual's constitutional right against self-incrimination and right to be forewarned of these rights, we likewise recognize that voluntary statements, even if incriminating, are not *per se* barred by the Fifth Amendment. *See Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 1612 (1966); *see also California v. Beheler*, 463 U.S. 1121, 1123, 103 S. Ct. 3517, 3519 (1983); *Oregon v. Mathiason*, 429 U.S. 492, 494, 97 S. Ct. 711, 713 (1977); *Beckwith v. United States*, 425 U.S. 341, 346-47, 96 S. Ct. 1612, 1616 (1976). It is only when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning [that] the privilege against self-incrimination is jeopardized, requiring the authorities to adequately advise the individual of his constitutional protections. *Miranda*, 384 U.S. at 444, 86 S. Ct. at 1612. In other words, before *Miranda* warnings are required, the accused must be the subject of custodial interrogation. *Id.*

In determining whether an individual is "in custody" as contemplated by *Miranda*, it is incumbent upon the reviewing court to decide whether, "under the totality of circumstances, a reasonable person in the suspect's position would consider himself or herself deprived of freedom of movement to a degree associated with formal arrest." *Walton*, 41 S.W.3d at 82; *see Anderson*, 937 S.W.2d at 855. Factors relevant to this determination include, but are not limited to, the following: (1) the time and location of the interrogation; (2) the duration and character of the questioning; (3) the officer's tone of voice and general demeanor; (4) the suspect's method of

transportation to the place of questioning; (5) the number of police officers present; (6) any limitation on movement or other form of restraint imposed on the suspect during the interrogation; (7) any interactions between the officer and the suspect; (8) the suspect's verbal or nonverbal responses; (9) the extent to which the suspect is confronted with the law enforcement officer's suspicions or evidence of guilt; and (10) the extent to which the suspect is made aware that he or she is free to refrain from answering questions or to end the interview at will. *Anderson*, 937 S.W.2d at 855 (citations omitted). The trial court is provided a wide latitude of discretion in its decision, and that decision will not be overturned by this court unless it appears there has been an abuse of the trial court's discretion and a violation of the defendant's rights. *See State v. Smith*, 868 S.W.2d 561, 570 (Tenn. 1993), *cert. denied*, 513 U.S. 960, 115 S. Ct. 417 (1994).

We conclude that the trial court did not abuse its discretion in determining that the Appellant was not in custody during the time he made the incriminating statements. "[T]he initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." *Stansbury v. California*, 511 U.S. 318, 323, 114 S. Ct. 1526, 1529 (1994). Specifically, the inquiry is "how a reasonable man in the suspect's position would have understood his situation," *i.e.*, would he have felt that he was not free to leave and, thus, in custody. *Berkemer v. McCarty*, 468 U.S. 420, 442, 104 S. Ct. 3138, 3151 (1984); *see also Michigan v. Chesternut*, 486 U.S. 567, 573, 108 S. Ct. 1975, 1979 (1988); *State v. Walton*, 41 S.W.3d at 82; *State v. Mosier*, 888 S.W.2d 781, 784 (Tenn. Crim. App. 1994); *State v. Furlough*, 797 S.W.2d 631, 639 (Tenn. Crim. App.), *perm. to appeal denied*, (Tenn. 1990). Considering the totality of the circumstances now before us, in the light most favorable to the State, we hold that the evidence supports a conclusion that the Appellant was not in custody when he made the incriminating statements in response to Deputy Graham's questioning. The Appellant was not under formal arrest until after the statements were made. At no time was he threatened or coerced into providing a statement. Accordingly, the Appellant's statements did not arise from a custodial environment with the attendant entitlement to *Miranda* warnings. This issue is without merit.

## II. Sufficiency of the Evidence

The Appellant next contends that the evidence was insufficient to "sustain the judgment of conviction for facilitation of possession of marijuana with the intent to deliver," a class A misdemeanor. Specifically, he argues that "there is no proof of any assistance being provided by the [Appellant] to Jefferson; and further, that there is no proof of any knowledge by the [Appellant] of any of the activities of Jefferson."

Any sufficiency analysis necessarily includes review of the elements of the offense for which the defendant is convicted. In this case, the trial court elected to instruct the jury on the offense of facilitating possession of marijuana with intent to deliver. No objection was entered to the trial court's instruction on this charge. Nonetheless, a trial court has the duty, in criminal cases, to fully instruct the jury on the general principles of law relevant to the issues raised by the evidence. In other words, the court must instruct the jury on those principles closely and openly connected with the facts before the court and which are necessary for the jury's understanding of the case. This

obligation includes giving instructions on lesser offenses included in the indictment, without any request on the part of the defendant. *See* Tenn. Code Ann. § 40-18-110(a) (1997). In determining when an instruction should be given, we are mindful that the ultimate goal of criminal proceedings should be a solemn search for the truth, so that one accused of a crime will be convicted or acquitted depending on the sufficiency of the evidence when measured against the reasonable doubt standard of proof. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 1073 (1970). The Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *See In re Winship*, 397 U.S. at 364, 90 S. Ct. at 1073; *Jackson*, 443 U.S. at 316, 99 S. Ct. at 2787. The relevant question upon review of a criminal conviction, be it the trial court or an appellate court, is whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 317, 319, 99 S. Ct. at 2788-89; *see also* Tenn. R. App. P. 13(e); Tenn. R. Crim. P. 29(a); *State v. Burns*, 6 S.W.3d 453, 469 (Tenn. 1999) (holding the trial court must determine if the evidence viewed liberally in the light most favorable to the existence of the lesser included offense is legally sufficient to support a conviction for the lesser included offense).[2]

Relevant to this case, an offense is a lesser included offense if:
(a) all of its statutory elements are included within the statutory elements of the offense charged; or

(b) it fails to meet the definition in part (a) only in the respect that it contains a statutory element or elements establishing:

> (1) a different mental state indicating a lesser kind of culpability; and/or

> (2) a less serious harm or risk of harm to the same person, property or public interest; or

(c) it consists of

---

[2]Absent this standard, the trial judge who charges a lesser offense based upon less than legally sufficient evidence would be faced with the absurd necessity, predicated upon its own invited error, of entering a judgment of acquittal following the jury's guilty verdict on the lesser offense. Moreover, to employ a lesser standard in determining whether the lesser offense should be instructed invites the jury to return a compromise or otherwise unwarranted verdict. *State v. Elder*, 982 S.W.2d 871, 878 (Tenn. Crim. App. 1998).

During deliberations, the jury returned with a question indicating that the verdict in ths case was a compromise verdict. The question reads: "As a jury, 11 to 1, we feel the defendant is guilty of possession with intent to deliver. Since we cannot at least yet agree, is it our legal obligation to go to the lesser-included charge of facilitation? The one different vote does agree with facilitation."

(1) facilitation of the offense charged. . . .

*Burns*, 6 S.W.3d at 466-67. Whether a lesser included offense must be charged in a jury instruction is a two-part inquiry. *Id.* at 467. First, the trial court must apply the *Burns* test to determine whether a particular lesser offense is included in the greater charged offense. *Id.* If a lesser offense is not included in the offense charged, then an instruction should not be given, regardless of whether evidence supports it. *Id.* If, however, the trial court concludes that a lesser offense is included in the charged offense, the question remains whether the evidence justifies a jury instruction on such lesser offense. *Id.*

To convict a defendant for facilitation of possession of marijuana with intent to deliver, the State must prove:

(1) that the defendant knew that another person intended to commit the specific felony of possession of marijuana with intent to deliver, but did not have the intent to promote or assist the commission of the offense or to benefit in the proceeds or results of the offense; and

(2) that the defendant furnished substantial assistance to that person in the commission of the felony; and

(3) that the defendant furnished such assistance knowingly.

T.P.I.--Crim. 3.02 (7th ed. 2000); *see also* Tenn. Code Ann. § 39-11-403 (1997). Facilitation by definition requires criminal culpability of a person other than that of the facilitator. At trial, the convicting evidence implicates only the Appellant. As such, we find no proof to support the three elements of the offense. Specifically, the record is devoid of any proof that the Appellant knowingly provided substantially assistance to Jefferson in the commission of the offense or that the Appellant knew that Jefferson intended to commit possession of marijuana with intent to deliver. In this case, the Appellant was the sole person indicted for the offense. The proof adduced at trial showed that the Appellant went inside an apartment complex with Jefferson. The Appellant exited the building several minutes before Jefferson, and Jefferson exited carrying the brown paper bag containing the marijuana. There was no evidence that the Appellant knew Jefferson intended to get marijuana from inside the residence or that the Appellant knew the substance inside the bag was marijuana. The Appellant's mere presence in the car and the apartment complex is not enough to constitute substantial assistance in the commission of the felony. Furthermore, the statements made by the Appellant claiming sole ownership of the marijuana are in contradiction to a charge of facilitation.

Finding the proof at trial insufficient to support the essential elements of the crime of facilitation beyond a reasonable doubt, we find, in accord with *Jackson v. Virginia,* that the Appellant's due process rights were violated. *See* Tenn. R. App. P. 13(e). As a general rule, appellate review is limited to issues that are properly presented for review before this court.

Notwithstanding, the Rules of Criminal Procedure and the Rules of Appellate Procedure recognize that an appellate court may consider issues not presented for review if they rise to the level of "plain error." *See* Tenn. R. App. P. 13(b); Tenn. R. Crim. P. 52(b). These matters lie within the sound discretion of the appellate court and may be addressed to prevent needless litigation, prevent injury to the interests of the public, prevent prejudice to the judicial process, prevent manifest injustice, or to do substantial justice. *State v. Adkisson*, 899 S.W.2d 626, 638-39 (Tenn. Crim. App. 1994). As such, we are constrained to note "plain error" by the trial court in submitting to the jury the offense of facilitating the possession of marijuana. Accordingly, the Appellant's conviction is reversed and remanded for a new trial upon the lesser offense of simple possession.

## CONCLUSION

Based upon the foregoing, we conclude that the Appellant does not have standing to challenge the traffic stop and subsequent search of the vehicle. However, because the evidence is insufficient to support an instruction to the jury of the lesser included offense of facilitation of possession of marijuana with intent to deliver, the Appellant's conviction is reversed and remanded for a new trial upon the lesser offense of class A simple possession of marijuana.

_____
DAVID G. HAYES, JUDGE