**IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE**

**AT NASHVILLE**

**NOVEMBER SESSION, 1998**

**FILED**

March 15, 1999

**Cecil W. Crowson**
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | **C.C.A. NO. 01C01-9804-CC-00184** |
| Appellant, | ) | |
| | ) | |
| | ) | **WILLIAMSON COUNTY** |
| **VS.** | ) | |
| | ) | **HON. DONALD P. HARRIS** |
| **CHARLES SCOTT ASHWORTH,** | ) | **JUDGE** |
| | ) | |
| Appellee. | ) | **(Direct Appeal - Possession of** |
| | ) | **Controlled Substance with Intent** |
| | ) | **to Sell)** |

FOR THE APPELLANT:

JOHN KNOX WALKUP
Attorney General and Reporter

LISA A. NAYLOR
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN  37243

JOE D. BAUGH, JR.
District Attorney General

LEE E. DRYER
Assistant District Attorney
P. O. Box 937
Franklin, TN  37064

FOR THE APPELLEE:

ERIC L. DAVIS
317 Main Street, Ste. 208
Franklin, TN  37064

OPINION FILED _____

REVERSED AND REMANDED

JERRY L. SMITH, JUDGE

# OPINION

On November 10, 1997, Appellee Charles Scott Ashworth was indicted by the Williamson County Grand Jury for one count of possession of a controlled substance with intent to sell. On December 2, 1997, Appellee filed a motion to suppress the marijuana that was discovered during a search of his vehicle and a subsequent written statement that he gave to police. By orders dated March 16 and 19, 1998, the trial court granted Appellee's motion to suppress. The State challenges the trial court's suppression of the evidence. After a review of the record, we reverse the judgment of the trial court and remand this matter for further findings of fact.

## I. FACTS

Officer Collin Consiglio of the Brentwood, Tennessee Police Department testified that on September 22, 1997, he saw Appellee driving his vehicle at a speed of 52–53 miles per hour in a 45 mile per hour zone. Consiglio then asked the police dispatcher to check on the validity of Appellee's license plate and he initiated a traffic stop. As Consiglio approached Appellee, the dispatcher reported that the license plate did not match Appellee's vehicle. Consiglio believed that Appellee was agitated and very nervous at this point.

Consiglio testified that when he asked Appellee for his driver's license and registration, Appellee provided a license, but said that he did not have his registration. Consiglio then asked Appellee to exit his vehicle and join him in standing between the two parked vehicles so that he would not be hit by another

car while standing next to Appellee's vehicle. Consiglio then ran a check of the driver's license on his portable radio. When the dispatcher reported that the driver's license was valid, Consiglio told Appellee that he would let him go with a warning. Consiglio testified that he then asked Appellee whether he was transporting any contraband and Appellee said no. Consiglio then asked for consent to search the vehicle, and Appellee agreed to the search.

Consiglio testified that after Appellee consented to the search, Consiglio patted him down for weapons, told him that he was not under arrest, and asked him to sit in the patrol car so that Consiglio could search the vehicle without worrying about what Appellee was doing. After Consiglio found three packages of marijuana in the vehicle, he arrested Appellee and took him to the police station. At the station, Consiglio gave Appellee the <u>Miranda</u> warnings and Appellee then signed a written waiver of his rights. Appellee then prepared a written statement in which he admitted that he had purchased the marijuana for resale. Appellee then asked whether he could work for the drug task force. Consiglio told Appellee that it was up to him to decide what to do.

Appellee testified that he had been watching his speedometer before he was stopped and he had not driven faster than 45 miles per hour. When Consiglio asked for his license and registration, Appellee gave him the license and stated that he did not have his registration with him. Appellee testified that Consiglio then ordered him out of the vehicle, ordered him to place his hands on the trunk of the vehicle, and then patted him down for weapons.

Appellee testified that he then heard the dispatcher report that his license was valid. Consiglio then told Appellee that he would let him go with a warning, but before he left, Consiglio asked whether he was transporting any contraband such as drugs, guns, knives, or hand grenades. When Appellee said no, Consiglio asked whether he could search the vehicle. Appellee testified that when he asked whether he had to agree to the search, Consiglio said he didn't have to agree, but if he didn't, Consiglio would get a warrant and search the vehicle anyway. Appellee then told Consiglio that he could search his vehicle and Consiglio then placed Appellee in the back of his locked patrol car.

Appellee testified that after he was arrested and taken to the police station, he asked Consiglio if there was anything he could do to get himself out of trouble. Consiglio and Sergeant Ricky Knight then told Appellee to write down a statement that they could give to the drug task force. When Appellee wrote a simple statement, Knight said that it was not good enough and told Appellee to tear it up. Consiglio and Knight then helped Appellee prepare another written statement in which he admitted purchasing the marijuana for resale. Appellee testified that he signed the waiver of rights form after he gave the written confession. Appellee claimed that he did not know that what he wrote in the statement could be used against him in court. Appellee also testified that he did not understand the Miranda warnings.

Consiglio testified in rebuttal that he never told Appellee that he would obtain a warrant if Appellee did not consent to the search. Consiglio also testified that he did not perform a weapons frisk on Appellee until after Appellee had consented to the search.

## II. ANALYSIS

The State contends that the trial court erred when it granted the motion to suppress the marijuana that was discovered during the search of Appellee's vehicle and the written statement that Appellee subsequently made at the police station.

### A. Search of Appellee's Vehicle

The Fourth Amendment to the United States Constitution provides, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause . . . ." U.S. Const. amend IV. Similarly, Article I, Section 7 of the Tennessee Constitution guarantees, "That the people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures . . . ." Tenn. Const. art. I, § 7. Unless it falls within a specifically established and well-delineated exception, a search conducted without a warrant is per se unreasonable. Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973) (citations omitted). "One of the specifically established exceptions to both a warrant and probable cause is a search that is conducted pursuant to a voluntarily given consent." Id. 412 U.S. at 219, 93 S.Ct. at 2043–44 (citations omitted); see also State v. Bartram, 925 S.W.2d 227, 230 (Tenn. 1996). The burden of proof rests upon the State to show, by a preponderance of the evidence, that the consent to a warrantless search was given freely and voluntarily. Schneckloth, 412 U.S. at 248–49, 93 S.Ct. at 2059; Bumper v. North

Carolina, 391 U.S. 543, 548, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 797 (1968); Bartram, 925 S.W.2d at 230. The question of whether an accused voluntarily consented to the search is a question of fact which focuses upon the totality of the circumstances. Schneckloth, 412 U.S. at 248–49, 93 S.Ct. at 2059. "In order to pass constitutional muster, consent to search must be unequivocal, specific, intelligently given, and uncontaminated by duress or coercion." State v. Brown, 836 S.W.2d 530, 547 (Tenn. 1992).

This Court is obliged to uphold the trial court's findings of fact in a suppression hearing unless the evidence preponderates against them. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). "The existence of consent and whether it was voluntarily given are questions of fact." State v. McMahan, 650 S.W.2d 383, 386 (Tenn. Crim. App. 1983). In this case, the trial court neglected to make any factual findings concerning the voluntariness or validity of Appellee's consent. The trial court also failed to make findings of fact sufficient for this Court to determine whether Appellee voluntarily consented to the search. The trial court apparently concluded that it was not necessary to make these findings in order to resolve the issues in this case. Instead, the trial court ruled that the motion to suppress should be granted because once Consiglio told Appellee that he could proceed with only a warning, Consiglio had no authority to continue to detain Appellee for further questioning and thus, Consiglio's actions were improper and unreasonable under the Fourth Amendment and Article I, Section 7.[1]

---

[1]The trial court failed to make any factual findings about whether Appellee was stopped because he was speeding or, as he claims, merely because he looked suspicious. The trial court concluded that it was not necessary to make these findings in order to resolve this matter. However, the general rule is that a police officer must have a reasonable suspicion, supported by specific and articulable facts, that a criminal offense has been or is about to be committed before the officer may make an investigatory stop of a motor vehicle. State v. Watkins, 827 S.W.2d 293, 294 (Tenn. 1992) (citing Terry v. Ohio, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906 (1968)). Thus, unless Consiglio actually had a reasonable articulable suspicion that Appellee had been speeding, the initial stop of Appellee was unlawful under the

We conclude that the trial court erred when it determined that Appellee was subjected to continued detention simply because Consiglio asked him whether he was transporting any contraband. In Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court stated that not every encounter between a policeman and a citizen is a seizure. 392 U.S. at 19 n.16, 88 S.Ct. at 1878 n.16. "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." Id. Further, the Supreme Court stated in INS v. Delgado, 466 U.S. 210, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984):

> What is apparent from [Florida v.] Royer, [460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983)] and Brown [v. Texas, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979)] is that police questioning, by itself, is unlikely to result in a Fourth Amendment violation. While most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response. Unless the circumstances of the encounter are so intimidating as to demonstrate that a reasonable person would have believed he was not free to leave if he had not responded, one cannot say that the questioning resulted in a detention under the Fourth Amendment.

466 U.S. at 216–17, 104 S.Ct. at 1762–63 (citations omitted). Thus, Consiglio did not continue to detain Appellee by merely asking him a question about whether he was transporting contraband. When a traffic stop ceases to be a detention and the driver voluntarily consents to additional questioning, no further seizure occurs. See United States v. Sullivan, 138 F.3d 126, 133 (4th Cir. 1998) (holding that detention ended when police officer returned driver's license and registration and driver voluntarily consented to additional questioning); United States v. Anderson, 114 F.3d 1059, 1064 (10th Cir. 1997) (holding that traffic stop ceases to become a detention and becomes a consensual encounter when

---

Fourth Amendment and Article I, Section 7.

police officer returns license and registration unless driver has "objectively reasonable" cause to believe that he or she is not free to leave). Rather than concluding that Appellee was subjected to an illegal detention merely by being asked a question, the trial court should have made findings regarding whether a reasonable person in Appellee's position would have felt free to leave without responding to the question.[2]

Of course, even if Appellee was not illegally detained when Consiglio asked the question about contraband, the search of Appellee's vehicle was still not valid unless Appellee had given voluntary consent that was untainted by duress or coercion. Brown, 836 S.W.2d at 547. This determination can only be made by examining the "totality of the circumstances" surrounding the giving of consent. Schneckloth, 412 U.S. at 248–49, 93 S.Ct. at 2059. Although an examination of the "totality of the circumstances" involves many factors, it is clear that a determination of whether Appellee's consent was voluntary simply cannot be made without findings of fact as to whether or not Consiglio actually threatened to obtain a warrant if Appellee did not consent to the search. See United States v. White, 979 F.2d 539, 542 (7th Cir. 1992) ("Baseless threats to obtain a search warrant may render consent involuntary.").[3] Unfortunately, the trial court neglected to make any factual findings about whether Consiglio made the alleged threat.

---

[2]We note that the trial court found that Consiglio improperly removed Appellee from his vehicle and frisked him for weapons before asking for consent to search the vehicle. Although we disagree that having Appellee exit his vehicle was improper, see Ohio v. Robinette, 519 U.S. 33, __, 117 S.Ct. 417, 421, 136 L.Ed.2d 347 (1996), we do agree that the weapons frisk was improper because there is no indication that Consiglio had a reasonable articulable suspicion that Appellee was armed, see Terry, 392 U.S. at 27, 88 S.Ct. at 1883. Being subjected to an improper weapons frisk certainly could have an effect on a reasonable person's belief that he or she was free to leave, but this fact alone is not determinative.

[3]There is nothing in the record that indicates that Consiglio had probable cause to believe that Appellee's vehicle actually contained contraband. Thus, it appears that any threat to obtain a warrant would have been baseless.

In short, because the trial court erroneously determined that Consiglio unlawfully detained Appellee merely by asking him a question, this matter must be remanded for additional findings of fact regarding the voluntariness of Appellee's consent to search his vehicle.

**B. Appellee's Written Statement**

The Fifth Amendment to the United States Constitution provides in part that "no person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. Amend. V. Similarly, Article I, Section 9 of the Tennessee Constitution states that "in all criminal prosecutions, the accused . . . shall not be compelled to give evidence against himself." Tenn. Const. art. I, § 9. However, an accused may waive this right against self-incrimination. Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). In Miranda, the United States Supreme Court held that a suspect

> must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.

384 U.S. at 479, 86 S.Ct. at 1630. The Supreme Court held that a suspect may knowingly and intelligently waive the right against self-incrimination only after being apprised of his or her Miranda rights. Id. Accordingly, a constitutional waiver of the right against self-incrimination requires the accused to make an intelligent, knowing, and voluntary waiver of the rights afforded by Miranda. Id. 384 U.S. at 444, 86 S.Ct. at 1612.

In this case, the trial court neglected to make any findings about whether Appellee was given his <u>Miranda</u> warnings before or after he made the written statement. The trial court also failed to make any findings about whether Appellee voluntarily waived his <u>Miranda</u> rights or whether his waiver was coerced by the police. The trial court apparently concluded that these findings were unnecessary because the written statement was "fruit of the poisonous tree" that should be suppressed because it was obtained only because of the prior unlawful search of Appellee's vehicle. See <u>Brown v. Illinois</u>, 422 U.S. 590, 602–04, 95 S.Ct. 2254, 2261–62, 45 L.Ed.2d 416 (1975); <u>Wong Sun v. United States</u>, 371 U.S. 471, 484–86, 83 S.Ct. 407, 415–16, 9 L.Ed.2d 441 (1963); see also <u>State v. Huddleston</u>, 924 S.W.2d 666, 674 (Tenn. 1996).

We agree with the trial court that if the search of Appellee's vehicle was unlawful, the confession would have to be suppressed because it is unlikely that the confession resulted from "an intervening independent act of a free will" sufficient to "purge the primary taint of the unlawful invasion." <u>Wong Sun</u>, 371 U.S. at 486, 83 S.Ct. at 416–17; <u>Brown</u>, 422 U.S. at 603–04, 95 S.Ct. 2261–62. However, if the trial court determines on remand that the search of Appellee's vehicle was conducted pursuant to voluntary consent, the trial court must also make findings of fact about whether Appellee was given his <u>Miranda</u> warnings before he made his written statement, and if so, whether the waiver of those rights was valid.

### III. CONCLUSION

Because we hold that the trial court based its decision to grant the motion to suppress on erroneous grounds, and pretermitted making additional findings of fact necessary for a determination as to the validity of the search and interrogation of Appellant, we reverse the judgment of the trial court and we remand this matter for further factual findings consistent with this opinion.

_____
JERRY L. SMITH, JUDGE


CONCUR:


_____
GARY R. WADE, PRESIDING JUDGE


_____
JOHN H. PEAY, JUDGE