# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### January 21, 2003 Session

## STATE OF TENNESSEE v. BRANDEN HANEY[1] AND LAWRENCE DAVIS

**Direct Appeal from the Circuit Court for Cocke County**
**Nos. 8367 and 8370    Ben W. Hooper, II, Judge**

_____

**No. E2002-00559-CCA-R3-CD**
**September 19, 2003**
_____

The appellants, Branden Haney and Lawrence Davis, pled guilty in the Cocke County Circuit Court to one count of possession of more than .5 grams of a substance containing cocaine with intent to sell, a Class B felony; one count of possession of more than .5 ounces of marijuana with intent to sell, a Class E felony; and one count of possession of drug paraphernalia, a Class A misdemeanor. The trial court sentenced Haney as a Range I standard offender to an effective sentence of eight years incarceration in the Tennessee Department of Correction, with the sentence to be suspended and served in a community corrections program. The trial court sentenced Davis as a Range I standard offender to an effective sentence of eight years incarceration, with the sentence to be suspended and served in a community corrections program "after [one] year split confinement in [the] Cocke County Jail." Pursuant to their plea agreements, Haney and Davis reserved the right to appeal certified questions of law challenging the trial court's denial of their motions to suppress. Upon review of the record and the parties' briefs, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court are Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and JAMES CURWOOD WITT, JR., JJ., joined.

Edward C. Miller, Dandridge, Tennessee, for the appellant, Branden Haney.

Jason S. Randolph, Dandridge, Tennessee, for the appellant, Lawrence Davis.

Paul G. Summers, Attorney General and Reporter; Angele M. Gregory, Assistant Attorney General; Al Schmutzer, Jr., District Attorney General; and Ronald C. Newcomb, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

_____

[1] Throughout the record, this appellant's first name is spelled both "Branden" and "Brandon." For the purposes of this opinion, we will use the name that appears in the indictment, "Branden Haney."

## I. Factual Background

On March 12, 2001, the appellants, Branden Haney and Lawrence Davis, and co-defendant, Justin Carter, were indicted on various drug-related offenses. The appellants filed pretrial motions to suppress evidence seized as a result of the stop and subsequent search of Davis's vehicle. At the suppression hearing, the parties agreed to rely on the facts adduced at the preliminary hearing and the arguments of counsel. Officer Garrett Webb of the Newport Police Department was the only witness to testify at the preliminary hearing.

Officer Webb testified that on the afternoon of the offense, he was patrolling along Cosby Highway when Officer Patrick Sheldon announced over the police radio that he was conducting a traffic stop at a nearby community center. Officer Webb proceeded to the community center to assist Officer Sheldon with the traffic stop. However, as he turned onto Prospect Avenue, a purple Ford Escort pulled recklessly in front of him, causing him to nearly have to stop his patrol car. Officer Webb stated that the vehicle "pulled out recklessly in front of me like it didn't even, wasn't even paying attention, didn't see what was in the roadway." Officer Webb followed the vehicle for a short period of time, intending to stop the vehicle "next to Officer Sheldon's [traffic] stop." When the vehicle slowed upon approaching the traffic stop, Officer Webb pulled alongside the vehicle and told the driver, Haney, to pull to the side of the street. Once the vehicle had stopped, Officer Webb parked his patrol car and activated his blue lights.[2]

Immediately after Officer Webb stopped the vehicle, Officer Scott Lamb arrived at the scene. Officer Lamb asked the appellants and co-defendant Carter to step out of the vehicle and the three men complied. Officer Webb then asked to whom the vehicle belonged and Davis responded that he owned the vehicle. Officer Webb asked to search the vehicle and Davis consented to the search. Under the driver's seat, Officer Webb discovered "a yellow plastic bag containing what appeared to be marijuana and a Crown Royal bag inside that containing another bag of marijuana and what appeared to be cocaine." According to Officer Webb, the drugs were not "locked in a box or anything," but were simply laying in the yellow plastic bag under the seat. Officer Webb also discovered a set of scales in the yellow bag. Based upon his experience, Officer Webb estimated that the bag contained .5 ounces of cocaine and 4.5 ounces of marijuana.

Officer Webb testified that while he searched the vehicle, Officer Lamb conducted a pat-down search of the appellants and Carter. Officer Webb stated that Officer Lamb found two hundred seventy-five dollars ($275); however, Officer Webb could not recall on whom the money was discovered. Officer Webb further testified that he did not know if the money was related to the sale of drugs.

Officer Webb testified that he stopped the vehicle for pulling out recklessly in front of his patrol car. "I wanted to speak to him about the traffic violation. I thought maybe they were drinking

---

[2] At the preliminary hearing, Officer Webb testified that, because he did not have a video or audio recorder in his patrol car, he did not record the stop.

and driving . . . on account of them pulling out recklessly." However, he stated that once he pulled his patrol car beside Davis's vehicle, he recognized the driver, Haney. Officer Webb knew that Officers Lamb and Sheldon wanted to speak to Haney regarding a shooting the prior evening. According to Officer Webb, the officers believed that either Haney or an acquaintance had been involved in the shooting. Moreover, Haney matched the description of the shooter who had been described as a man with an "Afro-style haircut." Officer Webb acknowledged that the appellants were not charged with a moving traffic violation or driving under the influence.

After reviewing the transcript of the preliminary hearing and considering the arguments of counsel, the trial court denied the appellants' motions to suppress. The trial court stated,

> In trying to put it in simple terms I suppose it appeared to the Court that the initial stop of this vehicle was absolutely justified. It so happened that almost simultaneously with that stop being made that there was another event that caused . . . the occupants to be asked to step outside the vehicle. And it was related to another officer than the one that testified at the [p]reliminary [h]earing, it was Officer Lamb I believe, about some prior shooting and some evidence of the shooter or somebody involved in the shooting having an Afro-style haircut. And of course Mr. Haney I assume was the person that bore that resemblance. The question I guess was then asked . . . can we search and consent was given.
>
> . . . [Applying] the principles that I have found in all the authority that's been submitted, to me it's just clear that this was a valid stop. The ensuing events including the consent just eliminate any standing for these defendants to complain about the search.

Thereafter, the appellants pled guilty to one count of possession of more than .5 grams of a substance containing cocaine with intent to sell, one count of possession of more than .5 ounces of marijuana with intent to sell, and one count of possession of drug paraphernalia. Pursuant to Rule 37(b)(2)(i) of the Tennessee Rules of Criminal Procedure, Haney and Davis reserved the right to appeal certified questions of law challenging the trial court's denial of their motions to suppress.

## II. Analysis

Generally, a trial court's findings of fact in a suppression hearing will be upheld on appeal unless the evidence preponderates against those findings. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996).

> Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact. The party prevailing in the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence.

Id. However, "when a trial court's findings of fact at a suppression hearing are based on evidence that does not involve issues of credibility, a reviewing court must examine the record de novo without a presumption of correctness." State v. Binette, 33 S.W.3d 215, 217 (Tenn. 2000). In any event, the application of the law to the trial court's findings of fact is a question of law subject to de novo review. State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997).

The appellants assert that, because no evidence was presented at the suppression hearing and the trial court based its findings of fact on the transcript of the preliminary hearing, the appropriate standard of review in the instant case is de novo with no presumption of correctness. The State contends that, because "[t]he same judge presided over both the preliminary hearing and the suppression hearing[,] . . . the court had the benefit of hearing the officer's live testimony and judging his credibility." Thus, the State argues that the trial court's findings of fact should be granted a presumption of correctness. Our review of the record reveals that the preliminary hearing was presided over by Judge John A. Bell in the general sessions court, while the suppression hearing was presided over by Judge Ben W. Hooper, II, in the circuit court. The same judge did not preside over both hearings. Accordingly, because the trial court's findings of fact at the suppression hearing were based upon evidence that did not involve issues of credibility, our review of the trial court's findings will be de novo with no presumption of correctness.

A. The Legality of the Stop

Both the Fourth Amendment to the United States Constitution and Article 1, section 7 of the Tennessee Constitution prohibit unreasonable searches and seizures by law enforcement officers. The purpose of the Fourth Amendment and Article 1, section 7 is to "'safeguard the privacy and security of individuals against arbitrary invasions of government officials.'" State v. Munn, 56 S.W.3d 486, 494 (Tenn. 2001) (quoting State v. Bridges, 963 S.W.2d 487, 490 (Tenn. 1997)); see also State v. Downey, 945 S.W.2d 102, 106 (Tenn. 1997) (noting that Article 1, section 7 is identical in intent and purpose to the Fourth Amendment). "'Consequently, under both the federal and state constitutions, a warrantless search or seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement.'" Binette, 33 S.W.3d at 218 (quoting Yeargan, 958 S.W.2d at 629); see also Coolidge v. New Hampshire, 403 U.S. 443, 454-55, 91 S. Ct. 2022, 2032 (1971).

One such exception to the warrant requirement occurs when a law enforcement officer stops an automobile based upon probable cause to believe that a traffic violation has occurred. Whren v. United States, 517 U.S. 806, 810, 116 S. Ct. 1769, 1772 (1996); State v. Vineyard, 958 S.W.2d 730, 734 (Tenn. 1997). If the officer has probable cause to believe that a traffic violation has occurred, the seizure will be upheld even if the stop is a pretext for the officer's subjective motivations in conducting the stop. Whren, 517 U.S. at 813, 116 S. Ct. at 1774; Vineyard, 958 S.W.2d at 734-35. The United States Supreme Court announced another exception to the warrant requirement in Terry v. Ohio, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880 (1968), holding that a law enforcement officer may conduct a brief investigatory stop of an individual if the officer has a reasonable suspicion based upon specific and articulable facts that a criminal offense has been, is being, or is about to be

committed. See also State v. Keith, 978 S.W.2d 861, 865 (Tenn. 1998). This standard has been extended to the investigatory stop of vehicles. United States v. Brignoni-Ponce, 422 U.S. 873, 881, 95 S. Ct. 2574, 2580 (1975); State v. Watkins, 827 S.W.2d 293, 294 (Tenn. 1992). In other words, a law enforcement officer may stop a vehicle if the officer possesses a reasonable suspicion supported by specific and articulable facts that the occupants have committed or are about to commit a criminal offense. Watkins, 827 S.W.2d at 294.

The appellants contend that Officer Webb possessed neither probable cause nor reasonable suspicion to stop Davis's vehicle. Specifically, the appellants argue that there was no traffic violation, noting Officer Webb's testimony that he stopped the vehicle because "it pulled out recklessly in front of [his patrol car] like it . . . wasn't even paying attention." The appellants maintain that "'[n]ot paying attention' is a vague general impression [Officer Webb] may have held, but it is not a basis for a traffic citation." In support of their argument, the appellants cite State v. Smith, 21 S.W.3d 251, 257-58 (Tenn. Crim. App. 1999), in which this court held that driving on the white line after making a lane change was not a sufficient basis for reasonable suspicion that the defendant was driving under the influence and, because other vehicles were not affected, the failure to signal when changing lanes did not violate the traffic code or justify the stop. This court reasoned, "[w]e are reluctant to conclude that a person driving in a manner that an officer deems 'improper,' when the driving is not erratic or haphazard and does not create a dangerous situation, is subject to seizure while proceeding along a highway in a lawful manner." Id. at 258.

In the instant case, Officer Webb possessed, at a minimum, a reasonable suspicion to believe that the driver of the vehicle had committed a traffic violation. Officer Webb testified that he was on his way to assist Officer Sheldon with a traffic stop when Haney pulled recklessly out in front of his patrol car. Officer Webb related that he had to "nearly stop" his patrol car to avoid an accident. Unlike Smith where there was no testimony of hazardous driving, in the instant case Officer Webb testified that Haney was driving in an erratic and haphazard manner. By pulling out in front of Officer Webb, Haney created a dangerous situation, nearly causing an accident. Moreover, because of the manner in which Haney pulled out in front of his patrol car, Officer Webb was concerned that Haney was "drinking and driving." Accordingly, we conclude that Officer Webb was justified in stopping the vehicle.

B. The Legality of the Search

The appellants argue that, even if there was probable cause to stop the vehicle, the search exceeded the scope of the initial stop, thereby rendering Davis's consent involuntary. When conducting an investigatory stop of a vehicle, an officer's actions must be "reasonably related in scope to the circumstances which justified the interference in the first place." Terry, 392 U.S. at 20, 88 S. Ct. at 1879. The detention "must be temporary and last no longer than is necessary to effectuate the purpose of the stop." Florida v. Royer, 460 U.S. 491, 500, 103 S. Ct. 1319, 1325 (1983). "[T]he proper inquiry is whether during the detention, the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly." State v. Simpson, 968 S.W.2d 776, 783 (Tenn. 1998) (citing United States v. Sharpe, 470 U.S. 675, 686, 105 S. Ct. 1568, 1575 (1985)). However, further detention will be justified if, during a valid stop, law enforcement

-5-

officers develop a reasonable suspicion that the individual was engaged in other criminal activity. See United States v. Erwin, 155 F.3d 818, 822 (6th Cir. 1998).

Officer Webb testified at the preliminary hearing that he initially stopped the vehicle for recklessly pulling out in front of his patrol car. However, as he pulled alongside the vehicle to order the driver to stop, Officer Webb recognized Haney as a possible suspect in a recent shooting. As previously noted, Officer Lamb arrived on the scene immediately after the stop and ordered the appellants and co-defendant Curtis out of the vehicle. Officer Webb then asked and obtained consent to search the vehicle from Davis, the owner of the vehicle. "[C]onsent is not vitiated merely because the valid suspicion of wrongdoing for which an individual has been stopped proves to be unfounded or does not result in prosecution . . . ." Erwin, 155 F.3d at 823 (citing Ohio v. Robinette, 519 U.S. 33, 38-39, 117 S. Ct. 417, 421 (1996)). We conclude that the officers were justified in detaining the appellants because upon stopping the vehicle the officers had reasonable suspicion that Haney may have been involved in a recent shooting.

We also reject the appellants' assertion that Davis's consent to search was involuntary. As previously noted, a warrantless search of a vehicle is presumed unreasonable unless the State demonstrates that the search was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement. Binette, 33 S.W.3d at 218. One exception to the warrant requirement is a search conducted pursuant to an individual's consent. State v. Troxell, 78 S.W.3d 866, 871 (Tenn. 2002) (citing Schneckloth v. Bustamonte, 412 U.S. 218, 248, 93 S. Ct. 2041, 2059 (1973)). However, "[i]n order to pass constitutional muster, consent to search must be unequivocal, specific, intelligently given, and uncontaminated by duress or coercion." State v. Ashworth, 3 S.W.3d 25, 29 (Tenn. Crim. App. 1999). The State bears the burden of showing by a preponderance of the evidence that the consent to a warrantless search was freely and voluntarily given. Id. at 28-29. The question of whether an accused voluntarily consented to a search is a question of fact to be determined by looking at the totality of the circumstances. Id. at 29.

The appellants argue that the State did not show by a preponderance of the evidence that Davis's consent to search his vehicle was freely and voluntarily given. Quoting the dissent in United States v. Erwin, 155 F.3d 818, 827 (6th Cir. 1996) (Martin, J., dissenting), the appellants assert that "questionable consent hazily recollected fails to meet constitutional requirements." The appellants contend that Officer Webb "only 'hazily recollect[ed]' the consent." We disagree.

Although Officer Webb testified at the preliminary hearing that he could not recall the exact words by which Davis consented to the search of his vehicle, Officer Webb testified that Davis did, in fact, consent. Officer Webb related that immediately after he stopped the vehicle, Officer Lamb arrived at the scene and asked the appellants and co-defendant Carter to step out of the vehicle. Officer Webb then asked who owned the vehicle and, after claiming ownership, Davis consented to a search. There is no evidence in the record that Davis was threatened or coerced into consenting, or that the consent was not knowing and voluntary. Therefore, we conclude that Davis's consent to search his vehicle was voluntary and the search was valid.

We note that bond pending appeal was set for appellant Davis in the trial court. However, Tennessee Code Annotated section 40-11-113(b) provides that if a defendant is convicted pursuant to the provisions of Tennessee Code Annotated section 39-17-417(c)(1) (Supp. 2002), "the judge shall revoke bail immediately, notwithstanding sentencing hearings, motions for a new trial, or related post-guilt determination hearings."

### III.  Conclusion

For the aforementioned reasons, we affirm the judgments of the trial court.

_____
NORMA McGEE OGLE, JUDGE