# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs March 11, 2015

## STATE OF TENNESSEE v. PATRICK LEE MITCHELL

**Appeal from the Circuit Court for Williamson County**
**No. I-CR077407      Michael W. Binkley, Judge**

---

**No. M2014-01129-CCA-R3-CD - Filed May 22, 2015**

---

Pursuant to Rule 37(b) of the Tennessee Rules of Criminal Procedure, the defendant, who pleaded guilty to a single count of driving under the influence ("DUI"), appeals a certified question of law related to the trial court's denial of his motion to suppress the results of blood alcohol testing. Discerning no error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which CAMILLE R. MCMULLEN and ROGER A. PAGE, JJ., joined.

Eric L. Tate Davis, Franklin, Tennessee, for the appellant, Patrick Lee Mitchell.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General (Senior Counsel); Kim R. Helper, District Attorney General; and Carlin C. Hess, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

Originally charged with alternative counts of DUI following a traffic stop of his vehicle in Franklin after he struck a curb while executing a right turn, the defendant pleaded guilty to a single count of DUI for having a blood alcohol level of .16 percent in exchange for the dismissal of the remaining charge and a sentence of 11 months and 29 days probation.[1] With the consent of the State and the trial court, the defendant reserved the following certified question of law pursuant to Rule 37(b) of the Tennessee Rules of

---

[1]The transcript of the guilty plea submission hearing is not included in the record on appeal. We glean this information from other documents in the record.

Criminal Procedure:

> Did the trial court err in denying the defendant's Motion to Suppress thereby allowing the defendant's .16 grams % blood alcohol test result as evidence at any trial herein where after the defendant's arrest for Driving Under the Influence-1st Offense pursuant to T.C.A. § 55-10-401 and where thereafter the defendant repeatedly refused his consent for a blood draw in violation of T.C.A. § 55-10-406, but where the defendant was transported to the Williamson Medical Center for a mandatory blood draw pursuant to T.C.A. § 55-10-406(f)(2) [now (d)(5)(B)], and while awaiting the mandatory blood draw, the defendant consented to the same?

The trial court incorporated by reference in the judgment form an order specifying the question and memorializing the agreement of the court and the parties that the question was dispositive of the case against the defendant. *See* Tenn. R. Crim. P. 37(b)(2)(A).

Essentially, the defendant concedes that he consented to having his blood drawn but argues that his consent was not valid because it was coerced by the threat of the mandatory blood draw provision of Code section 55-10-406, which provision he claims is "inherently coercive." The State argues that the defendant gave actual and voluntary consent to the blood draw in this case.[2]

At the hearing on the defendant's motion, Trooper Charles Achinger testified that after a fellow trooper placed the defendant under arrest for DUI shortly after 10:00 p.m. on March 17, 2013, he asked the defendant if he would consent to a blood or breath test to determine the drug or alcohol content of his blood. The defendant refused. After making arrangements for the defendant's vehicle to remain in the parking lot where the arrest took place, Trooper Achinger read the Implied Consent Form to the defendant and again asked

---

[2]The State did not, at any point, argue that the results of the blood alcohol test in this case were admissible because the defendant was subject to the mandatory blood draw provision of Code section 55-10-406, possibly because another Williamson County trial judge had declared that provision unconstitutional just before the suppression hearing in this case. *See State v. Charles A. Kennedy*, M2013-02207-CCA-R9-CD (Tenn. Crim. App., Nashville, Oct. 13, 2014). In *Charles A. Kennedy*, we concluded that the challenged provision was constitutional but that it did not dispense with the constitutional requirement that police obtain a search warrant before conducting a mandatory blood draw pursuant to the statute. *Id.*, slip op. at 18. In any event, because Trooper Achinger did not obtain a search warrant and the State did not demonstrate any other exception to the warrant requirement, we agree that the issue of the defendant's consent is indeed dispositive. *See id.*

whether he would submit to a blood or breath test. The defendant again refused. At that point, Trooper Achinger explained to the defendant that because he had a prior conviction of DUI, the defendant would be subjected to a mandatory blood draw and that his refusal to submit to testing would result in his being charged with violating the implied consent law. The defendant again refused, and the trooper transported him to the hospital for a mandatory blood draw.

At the hospital, the defendant and Trooper Achinger went into "the isolation room . . . . where the police take people . . . to get their blood drawn," and he again "went over the consequences" of the defendant's refusal to submit to blood alcohol testing. He told the defendant that his refusal could result in the loss of his driver's license and that his blood would be drawn despite his refusal under the terms of the implied consent law. At that point, the defendant "changed his mind and said he would consent." Trooper Achinger said that he did not charge the defendant with violating the implied consent law. The defendant then signed the form consenting to have his blood drawn at the hospital at 11:18 p.m.

During cross-examination, Trooper Achinger said that he did not have the defendant sign the implied consent form memorializing his initial refusal because the defendant was handcuffed. He said it was not his practice to remove handcuffs at the scene of an arrest. He did not remove the defendant's handcuffs until he was at the hospital for the blood draw. Trooper Achinger said that he did not act out of a motivation to coerce the defendant into consenting to the test, explaining, "I had no motivation – it was a mandatory blood draw on him, so I was going to get it and that's what I told him. . . . Doesn't matter to me." He said that he did "want [the defendant] to make a good decision. He could get a whole another charge added on. . . . I think that it's just silly for somebody to do that when they know that there's a mandatory blood draw." He said that, while at the hospital, he informed the defendant that "even if he is not convicted of DUI, if he gets charged with implied consent, he will still lose his license for a year." It was following this admonition that the defendant changed his mind and consented to the blood draw. He said it was his understanding that the defendant could change his mind and consent to the test up until the mandatory blood draw occurred.

The defendant testified that he initially refused to submit to blood alcohol testing because he "was scared" and had "made up [his] mind" that he "wasn't going to do that." The defendant confirmed Trooper Achinger's testimony that the two did not talk on the way to the hospital. The defendant said that Trooper Achinger "was very courteous, very nice" but that "he just kept pushing" the defendant to consent to the blood test. He said that he did not want to have his blood drawn but that he "wasn't going to fight" or "resist that." He said that he could not remember signing the consent form but acknowledged his signature on the form. He said that he did not recall whether he had signed the form at the hospital or

at the jail. He said that all of the events of the evening were "kind of a blur." The defendant acknowledged telling Trooper Achinger that he was "not going to resist" the blood test but said that he did not mean that statement as consent and instead intended to "imply[]" that he "wasn't going to make trouble."

During cross-examination, the defendant said that he could not remember what he thought he might have been signing. He said that the only reason he "might have signed it" would have been "because of the pressure was being put on [him] to sign it." The defendant acknowledged that his recollection of the events of the evening was not good, explaining that he had "a good recollection of a lot of things that happened" but not the sequence of events.

At the conclusion of the hearing, the trial court noted that Trooper Achinger's testimony was clear and his recollection of events was sure and that the defendant's testimony, on the other hand, was unclear. The court found that the defendant initially refused blood alcohol testing "three or four times" before the trooper advised him a final time of the consequences of his continued refusal, and the defendant changed his mind and consented. The court observed that the defendant could not recall whether he signed the consent form before or after the test or whether he or Trooper Achinger placed the check marks in the box. The court found that "the threat of a mandatory blood draw is not, in and of itself," sufficient to undermine the voluntariness of the defendant's consent. The court again stated that the defendant was "not as clear at all about what happened" and observed, "That is the most important part of this lawsuit, and if he's not sure, what other testimony do I have to rely upon. I have the officer's testimony. . . . I'm left with the officer's testimony which appears to be clear."

A trial court's factual findings on a motion to suppress are conclusive on appeal unless the evidence preponderates against them. *State v. Binette*, 33 S.W.3d 215, 217 (Tenn. 2000); *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). Thus, questions of credibility, the weight and value of the evidence, and the resolution of conflicting evidence are matters entrusted to the trial judge, and this court must uphold a trial court's findings of fact unless the evidence in the record preponderates against them. *Odom*, 928 S.W.2d at 23; *see also* Tenn. R. App. P. 13(d). The application of the law to the facts, however, is reviewed de novo on appeal. *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998). We review the issue in the present appeal with these standards in mind.

Both the state and federal constitutions offer protection from unreasonable searches and seizures; the general rule is that a warrantless search or seizure is presumed unreasonable and any evidence discovered subject to suppression. *See* U.S. Const. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against

-4-

unreasonable searches and seizures, shall not be violated . . . ."); Tenn. Const. art. I, § 7 ("That the people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures . . . ."). "[T]he most basic constitutional rule in this area is that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment -- subject only to a few specifically established and well-delineated exceptions.'" *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55 (1971) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)); *see also State v. Bridges*, 963 S.W.2d 487, 490 (Tenn. 1997). "The exceptions are 'jealously and carefully drawn,' and there must be 'a showing by those who seek exemption . . . that the exigencies of the situation made that course imperative.'" *Coolidge*, 403 U.S. at 455 (quoting *Jones v. United States*, 357 U.S. 493, 499 (1958), and *McDonald v. United States*, 335 U.S. 451, 456 (1948)). "We are not dealing with formalities. The presence of a search warrant serves a high function." *McDonald*, 335 U.S. at 455. Thus, a trial court necessarily indulges the presumption that a warrantless search or seizure is unreasonable, and the burden is on the State to demonstrate that one of the exceptions to the warrant requirement applied at the time of the search or seizure. *See, e.g.*, *Missouri v. McNeely*, 133 S. Ct. 1552, 1558 (2013) ("Our cases have held that a warrantless search of the person is reasonable only if it falls within a recognized exception.").

Consent to search, voluntarily given, acts as an exception to both the state and federal warrant requirements. *Florida v. Bostick*, 501 U.S. 429, 438 (1991) ( stating that the "decision to cooperate with law enforcement officers authorizes the police to conduct a search without first obtaining a warrant *only* if the cooperation is voluntary"); *Schneckloth v. Bustamonte*, 412 U.S. 218, 243 (1973) (stating that "there is nothing constitutionally suspect in a person's voluntarily allowing a search"); *State v. Bartram*, 925 S.W.2d 227, 230 (Tenn. 1996). To satisfy the constitutional reasonableness standard, the consent must be "'unequivocal, specific, intelligently given, and uncontaminated by duress or coercion.'" *State v. Simpson*, 968 S.W.2d 776, 784 (Tenn. 1998) (quoting *State v. Brown*, 836 S.W.2d 530, 547 (Tenn. 1992)). "The question of whether an accused voluntarily consented to the search is a question of fact which focuses upon the totality of the circumstances." *State v. Ashworth*, 3 S.W.3d 25, 29 (Tenn. Crim. App. 1999) (citing *Schneckloth*, 412 U.S. at 248-49).

Here, the trial court accredited Trooper Achinger's testimony that although the defendant initially refused to submit to the blood draw, he eventually changed his mind and voluntarily consented. The evidence does not preponderate against this finding. The defendant testified that he was "nervous" and that he felt "pressured," but his testimony fell short of establishing that Trooper Achinger actually obtained his consent to search via coercion or intimidation. Indeed, the defendant testified that Trooper Achinger never treated him with anything other than courtesy. The 46-year-old defendant had previously been

convicted of DUI, indicating at least some familiarity with the justice system. We cannot say under these circumstances that the defendant's initial refusal establishes that he did not later voluntarily consent to the blood draw. *See State v. McCrary*, 45 S.W.3d 36, 43 (Tenn. Crim. App. 2000) ("Logan's initial hesitation in no way establishes that her subsequent consent was involuntary, but rather reflects her consideration of the option, confirmed by the trooper, to refuse consent."). Additionally, the record does not establish that the defendant's consent was rendered involuntary by the threat of a mandatory blood draw. At the time of the defendant's arrest, Code section 55-10-406(f)(2) did, in fact, mandate the taking of his blood. *See* T.C.A. § 55-10-406(f)(2) (2012) ("[T]he officer shall cause the driver to be tested for the purpose of determining the alcohol or drug content of the driver's blood. The test . . . *shall be performed regardless of whether the driver does or does not consent to the test*.") (emphasis added). This court has since held that "Code section 55-10-406(f)(2) does not dispense with the warrant requirement." *State v. Charles A. Kennedy*, M2013-02207-CCA-R9-CD, slip op. at 18 (Tenn. Crim. App., Nashville, Oct. 13, 2014). That being said, our ruling in *Charles A. Kennedy* does not transform Trooper Achinger's informing the defendant that he would be subjected to a mandatory blood draw into a "'[b]aseless threat[].'" *Ashworth*, 3 S.W.3d at 30 ("'Baseless threats to obtain a search warrant may render consent involuntary.'" (quoting *United States v. White*, 979 F.2d 539, 542 (7th Cir. 1992)).

Because the evidence does not preponderate against the trial court's finding that the defendant voluntarily consented to the blood draw, we affirm the judgment of the trial court.

_____
JAMES CURWOOD WITT, JR., JUDGE