# NO. 12-19-00257-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *LARRY LAMONT WARREN, APPELLANT* | § | *APPEAL FROM THE 7TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS, APPELLEE* | § | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Larry Lamont Warren appeals his conviction for burglary of a building. In a single issue, Appellant contends the evidence is insufficient to support his conviction. We affirm.

## BACKGROUND

Appellant was charged by indictment with burglary of a building. Appellant pleaded "not guilty," and the matter proceeded to a jury trial. The jury found Appellant "guilty." At the punishment phase of trial, Appellant pleaded "true" to the indictment's enhancement paragraphs. Following evidence and argument, the jury found the enhancement paragraphs "true" and sentenced Appellant to sixteen years imprisonment. This appeal followed.

## SUFFICIENCY OF THE EVIDENCE

In his sole issue, Appellant contends the evidence is insufficient to support his conviction. Specifically, he urges that his actions constitute a "mistake of fact." He further argues that he never entered a "building" as required by the statute.

### Standard of Review

In Texas, the ***Jackson v. Virginia*** legal sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each

element of a criminal offense that the State is required to prove beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). Legal sufficiency is the constitutional minimum required by the Due Process Clause of the Fourteenth Amendment to sustain a criminal conviction. *See Jackson v. Virginia*, 443 U.S. 307, 316–17, 99 S. Ct. 2781, 2786–87, 61 L. Ed. 2d 560 (1979). The standard for reviewing a legal sufficiency challenge is whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See id.*, 443 U.S. at 319, 99 S. Ct. at 2789. The evidence is examined in the light most favorable to the verdict. *Id.* A successful legal sufficiency challenge will result in rendition of an acquittal by the reviewing court. *See Tibbs v. Florida*, 457 U.S. 31, 41–42, 102 S. Ct. 2211, 2217–18, 72 L. Ed. 2d 652 (1982). This familiar standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789.

Under this standard, we may not sit as a thirteenth juror and substitute our judgment for that of the factfinder by reevaluating the weight and credibility of the evidence. *See Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999); *see also Brooks*, 323 S.W.3d at 899. Instead, we defer to the factfinder's resolution of conflicting evidence unless the resolution is not rational. *See Brooks*, 323 S.W.3d at 899–900. When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Direct and circumstantial evidence are treated equally. *Id.* Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). The duty of a reviewing court is to ensure that the evidence presented actually supports a conclusion that the defendant committed the crime charged. *See Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

The sufficiency of the evidence is measured against the elements of the offense as defined by a hypothetically correct jury charge. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge would include one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

2

**Applicable Law**

A person commits burglary of a building if, without the owner's effective consent, the person enters a building with intent to commit a felony, theft, or an assault. TEX. PENAL CODE ANN. § 30.02(a)(1) (West 2019). "Building" means any enclosed structure intended for use or occupation as a habitation or for some purpose of trade, manufacture, ornament, or use. *Id.* § 30.01(2) (West 2019). The structure itself must be of an enclosed character. *Day v. State*, 534 S.W.2d 681, 683 (Tex. Crim. App. 1976). A structure that is merely enclosed by something, such as a chain link fence, is not an enclosed structure under the statute. *Id.*

The general defense of mistake of fact has been codified as Section 8.02(a) of the Texas Penal Code. *See Granger v. State,* 3 S.W.3d 26, 38 (Tex. Crim. App. 1999). Section 8.02(a) provides that "[i]t is a defense to prosecution that the actor through mistake formed a reasonable belief about a matter of fact if his mistaken belief negated the kind of culpability required for the commission of the offense." TEX. PENAL CODE ANN. § 8.02(a) (West 2011). "[K]ind of culpability" means "culpable mental state." *Beggs v. State,* 597 S.W.2d 375, 377–78 (Tex. Crim. App. 1980).

**Analysis**

Appellant urges that the evidence is insufficient to rebut his "mistake of fact" defense. Specifically, he contends that he did not believe he was taking the victim's lawn mower. Appellant further argues that the evidence is insufficient to show that he entered a "building."

Officer Cory Chamberlain of the Tyler Police Department testified that he was dispatched to Demarcus Harris's residence on October 17, 2018. He was advised that Harris claimed to be a victim of a lawn mower theft and that the suspect was also at the residence. When Officer Chamberlain arrived, Officer Steven Thomas was already on scene speaking with Harris. Harris informed the officers that Appellant was inside the residence.

Officer Chamberlain knocked on the door and Gail Warren, Appellant's mother, answered. She claimed Appellant left out the back door. Chamberlain informed Gail that Appellant had a prior warrant for his arrest and that she could be charged with harboring a fugitive. She then allowed Chamberlain into the residence. Chamberlain found Appellant hiding in a closet. When Chamberlain found Appellant, and before the officer could state why he was present, Appellant said "the lawn mower's in the front yard." But Appellant claimed that the lawn mower in the front yard belonged to his cousin. While being escorted to the police car, Appellant went on a tirade

3

against Harris for calling the police. Appellant told Chamberlain that he mistakenly took Harris's lawn mower. According to Appellant, he thought he was taking the lawn mower that he previously stole from his cousin, Roxanne Collier. While in Chamberlain's patrol car, Appellant directed the officers to Collier's residence to return the lawn mower. However, no one answered the door. Chamberlain proceeded to take Appellant to jail for further questioning. During Chamberlain's interview with Appellant at the Smith County Jail, Appellant volunteered that he took the wrong lawn mower from Harris's house. He also told Chamberlain that he received $5 from a pawn shop for the lawn mower. Chamberlain's testimony was corroborated by his body cam video, which was played for the jury.

Harris testified that Appellant brought a lawn mower to his house at approximately 3:50 a.m. on October 17, 2018. Harris had to be at work at 4:00 a.m., so he told Appellant to leave. Harris said Appellant attempted to sell him the lawn mower; however, Harris refused because he already had a lawn mower in his storage shed. When Harris came home on a break from his split shift, Appellant's lawn mower was no longer in his yard. Harris then went to work for the second leg of his shift. He later received a call from his mother about someone in the backyard. Harris went home to make sure his mother was okay and to see if anything was taken. Harris looked in the storage shed and found that his lawn mower was missing. Harris called Appellant and "begged and pleaded" for the lawn mower. Appellant told Harris that he sold it to a pawn shop. When Harris called the pawn shop, it was closed. Harris then called the police because he did not believe Appellant's story. Harris also went to Appellant's residence, and Appellant told him that the lawn mower was in the yard. However, the lawn mower in Appellant's yard did not belong to Harris.

Harris testified that he keeps his lawn mower in a metal shed storage building in his backyard. When asked if the shed was closed when he left for work, Harris answered:

> A: I don't lock it, to tell you the truth. I don't lock it. And sometimes I leave it cocked open.
> As a matter of fact, it's closed, but I got one of my kid's little toy vehicles in front of it. So I don't
> know. It could have been that way or what (sic). I don't know.
> Q: Either way, it's a fully-enclosed --
> A: Oh, yeah, it's fully enclosed.
> Q: And your lawn mower's in there. There's other things that you keep in that --
> A: In that shed, yes.

4

Harris further testified on cross-examination that he was certain that the lawn mower was in the shed and that no other lawn mowers were in his yard. Harris testified that he did not give anyone, including Appellant, permission to enter his storage shed and take his lawn mower.

Detective Ronny Tekell testified that he was assigned a case involving burglary of a building with Appellant as the suspect. After reading the reports from Officers Thomas and Chamberlain, Detective Tekell opined that a burglary of a building occurred. Tekell searched pawn shop records and found that Appellant sold the lawn mower to a pawn shop for $5. Tekell called the pawn shop and placed a hold on the lawn mower to keep it from being sold. He later met with Harris at the pawn shop, and Harris verified that the lawn mower was his.

Appellant also testified at trial. According to Appellant, he took a lawn mower from his cousin because she took his weed eater. He took Collier's lawn mower to Harris's house and asked him to put it in the backyard. Appellant testified that he thought Harris was going to put the lawn mower in the backyard and that is why he took the wrong one. He further claimed that the lawn mower was not in the shed when he took it from Harris's yard. Appellant testified that he sold the lawn mower to a pawn shop for $5 because he believed it was Collier's lawn mower. However, he admitted to taking the lawn mower from Harris's residence:

> Q: Let me just ask you directly if you took a lawn mower from Demarcus Harris's house.
> A: Yeah.
> Q: You did?
> A: Yes, sir.

On appeal, Appellant contends the evidence is insufficient to rebut his "mistake of fact" defense.[1] He contends the evidence did not rebut his belief that he was taking Collier's lawn mower, as opposed to Harris's lawn mower. He further contends the evidence is insufficient to prove that the lawn mower was taken from a building, in particular, the storage shed.

However, as the sole judge of the weight and credibility of the evidence, the jury was entitled to believe Harris's testimony and discredit Appellant's explanation. *See* **Brooks**, 323 S.W.3d at 899. In doing so, the jury could reasonably determine that Appellant stole his cousin's lawn mower, took it to Harris's for hiding, picked up his cousin's lawn mower later in the day,

---

[1] We note that Appellant did not argue "mistake of fact" at trial. He did not request a mistake of fact instruction and did not argue mistake of fact to the jury. However, this does not negate the State's responsibility to prove all of the elements of the offense beyond a reasonable doubt. *See* **Jackson v. Virginia**, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979).

5

returned to Harris's residence, took Harris's lawn mower from the storage shed, and sold it to a pawn shop. Harris testified that his lawn mower is always in the storage shed and that the other lawn mower was not in his yard when he returned from his first shift. Furthermore, the jury heard evidence that the storage shed was enclosed from both Harris and Detective Tekell. As a result, the jury could reasonably conclude the storage shed qualified as a building under the Penal Code. *See* TEX. PENAL CODE ANN. § 30.01(2); ***Day***, 534 S.W.2d at 683. Therefore, viewing the evidence in the light most favorable to the verdict, we conclude that a rational jury could have found the essential elements of burglary of a building beyond a reasonable doubt. *See* TEX. PENAL CODE ANN. § 30.02(a)(3). We overrule Appellant's sole issue.

## DISPOSITION

Having overruled Appellant's sole issue, we ***affirm*** the trial court's judgment.

BRIAN HOYLE
Justice

Opinion delivered March 25, 2020.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

6



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**MARCH 25, 2020**

**NO. 12-19-00257-CR**

**LARRY LAMONT WARREN,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 7th District Court
of Smith County, Texas (Tr.Ct.No. 007-1768-18)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*