# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs May 18, 2011

## STATE OF TENNESSEE v. RICHARD LOWELL BLANCHARD

**Appeal from the Circuit Court for Bedford County**
**No. 16812     Robert Crigler, Judge**

---

**No. M2010-01186-CCA-R3-CD - Filed June 24, 2011**

A Bedford County Circuit Court jury convicted the defendant of one count of aggravated robbery, *see* T.C.A. 39-13-402(a)(1) (2006), for which he received a sentence of 11 years' incarceration. In addition to challenging the sufficiency of the evidence to support his conviction, the defendant argues on appeal that the trial court erred by (1) denying his motion to suppress the photographic lineup identification, (2) denying his motion to suppress evidence, (3) allowing testimony concerning an officer's identification of him as a suspect, (4) denying his motion to recuse the trial judge, (5) denying his motions for mistrial, and (6) ordering his sentence to be served consecutively to previously imposed sentences.[1] Discerning no reversible error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which THOMAS T. WOODALL and J.C.MCLIN, JJ., joined.

Hershell D. Koger, Pulaski, Tennessee (at trial and on appeal);Michael J. Collins, Assistant Public Defender (at trial), for the appellant, Richard Lowell Blanchard.

Robert E. Cooper, Jr., Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; Charles Crawford, District Attorney General; and Richard Cawley, Assistant District Attorney General, for the appellee, State of Tennessee.

---

[1] Although the issues are not presented in this order in either party's brief, we have rearranged and renumbered the issues presented for consideration to ensure a logical, chronological analysis of the defendant's claims.

## OPINION

In the early morning hours of March 8, 2009, Frank Dickerson was working the night shift at the Kangaroo Express gas station and market in Shelbyville, Tennessee, when an individual, later identified as the defendant, entered the market. The defendant walked toward the beer cooler, but he then came around the counter to an area restricted to employees only. Mr. Dickerson pushed the defendant away. The defendant approached the counter area again, pulled a knife from behind his back, and told Mr. Dickerson to open the cash register drawer. Mr. Dickerson backed away from the defendant, activated the silent alarm, and opened the drawer. The defendant took money totaling less than $90 from the drawer and attempted to leave quickly. Mr. Dickerson became "a little angry," grabbed a can of beer from the counter, and "flung it at" the defendant. The beer can hit the defendant as he fled. The police arrived approximately two to three minutes later.

Mr. Dickerson recognized the defendant as a customer but added that the defendant was not a "regular." Mr. Dickerson went to the police station later, where he immediately identified the defendant from a photographic array presented to him by Detective Brian Crews of the Shelbyville Police Department (SPD).

Mr. Dickerson described the knife as a large, open, lock-blade knife. When asked if he was fearful of the defendant, Mr. Dickerson replied, "If you open a knife, yes, I think you might hurt me." He added that he "was afraid that [the defendant] might cut [him] if [he] didn't comply with what [the defendant] wanted."

SPD Officer Sam Jacobs responded to the call of a robbery at the Kangaroo Express market on March 8, 2009. When he arrived, he spoke to Mr. Dickerson who described the perpetrator as clean shaven with short brown hair wearing a black t-shirt and blue jeans.

Karen Wells, a store manager of the market, retrieved the surveillance video, copied it, and provided a copy to the police.

SPD Detective Brian Crews received the surveillance video from Ms. Wells. The video, played for the jury at trial, shows a man wearing hiking boots walking into the market. Detective Crews testified that when he watched the video, he recognized the assailant as "someone that [he] knew," the defendant, and assembled a photographic array containing the defendant's photograph. When presented the photographic lineup, Mr. Dickerson immediately identified the defendant as the perpetrator.

Based upon this identification, Detective Crews determined the defendant's

-2-

whereabouts and obtained an arrest warrant. The defendant was arrested on the front porch of a house where he was staying. Wearing only a pair of shorts when arrested, the defendant asked Detective Crews to get his shoes and t-shirt from inside the house. After returning to the police station, Detective Crews realized the shoes that he had retrieved from the house "were the same shoes that [the perpetrator] was wearing at the time of the robbery" as could be seen in the video. Detective Crews recalled that the defendant, who was "somewhat intoxicated" and "not very cooperative" at his arrest, did not make a statement. Investigators did not search the house where the defendant was arrested, and they did not find the lock-blade knife.

The defendant testified that he was a veteran of the United States Marine Corps and the French Foreign Legion. He spent two years employed as a trooper for the Florida Highway Patrol until he was forced to resign after a confrontation with another trooper who had had an affair with the defendant's then wife. The defendant also claimed to have spent four years working as a contractor in Iraq for the Department of Defense until he, along with 16 other contractors, was asked to leave Iraq. The defendant denied owning a knife, and he also denied that the surveillance video showed him at the Kangaroo Express market. He said that he was in a hotel room at the Bedford Inn at the time of the offense. He did not, however, produce a hotel receipt at trial to substantiate his alibi.

Based upon the evidence presented, the jury convicted the defendant of aggravated robbery. At sentencing, the trial court imposed an 11-year sentence and ordered it served consecutively to previously imposed sentences from Bedford County for which the defendant was on probation at the time of the aggravated robbery offense. *See* T.C.A. § 4–35-115(b)(6); Tenn. R. Crim. P. 32(c). A timely motion for new trial was denied by the trial court. The defendant filed a timely notice of appeal. This case is properly before the court.

*Photographic Lineup Identification*

The defendant filed a pretrial motion to exclude evidence of the photographic lineup identification made by Mr. Dickerson. At the pretrial hearing, the defendant conceded that Detective Crews had not employed any suggestive measures to elicit Mr. Dickerson's identification, but the defendant argued that the photographic lineup was itself unduly suggestive because the defendant's photograph shows more of his torso and he is wearing a black t-shirt. The trial court found that the photographic array was not unduly suggestive and ruled the identification admissible. On appeal, the defendant contends that the photographic array was unduly suggestive and, therefore, should have been suppressed. The State argues that the trial court's ruling was correct.

To be sure, "convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1968). In *Simmons*, the Court observed that "improper employment of photographs by police may sometimes cause witnesses to err in identifying criminals." *Id.* at 383. Noting that "[e]ven if the police subsequently follow the most correct photographic identification procedures . . . , there is some danger that the witness may make an incorrect identification," the Court concluded that the danger of misidentification "will be increased if the police display to the witness only the picture of a single individual who generally resembles the person he saw, or if . . . the photograph of a single such individual recurs or is in some way emphasized." *Id.* The Court also observed that "[t]he chance of misidentification is also heightened if the police indicate to the witness that they have other evidence that one of the persons pictured committed the crime." *Id.*

Following *Simmons*, the Court in *Neil v. Biggers*, 409 U.S. 188, 198-99 (1972), established a two-part analysis to assess the validity of a pre-trial identification. First, the trial court must determine whether the identification procedure was unduly suggestive. *Id.* at 198. Next, if the trial court determines that the identification procedure was unduly suggestive, it must then consider whether, under the totality of the circumstances, the identification was nonetheless reliable. *Id.* at 198-99.

In the present case, the trial court found that the photographic array was in no way suggestive. We have reviewed the array as it appears in the record, and we note that the individuals in the six photographs presented are remarkably similar in physical appearance. Three of the six photographs, including that of the defendant, include more of the person's shoulders and torso than the other three. Of the three photographs showing the person's torso, all are wearing black t-shirts. These minor differences in the photographs, however, do not single out the defendant's photograph in any way. On balance, we find nothing suggestive about the array. We agree with the trial court that Detective Crews did a "remarkable job" including individuals with similar physical characteristics in the array. Accordingly, we hold that the trial court did not err by denying the defendant's motion to suppress the photographic identification evidence.

*Suppression of Evidence*

Next, the defendant claims that the trial court erred by denying his motion to suppress evidence of the boots taken from the house where he was arrested. The State

-4-

responds that the trial court correctly ruled that no search of the house had occurred and that, therefore, the boots were admissible.

At a pretrial hearing, Detective Crews testified that when he arrived at the house to arrest the defendant, which was actually a place of business where the owner allowed the defendant to stay, the defendant was sitting on the back porch of the house wearing only "lounging shorts." Because the defendant quickly became belligerent, Detective Crews did not allow the defendant to get dressed before taking him into custody. He did, however, ask the defendant if he wanted a shirt and shoes to wear at the jail. The defendant indicated that he would like shoes and a shirt. Detective Crews went into the house and picked up the first shoes and shirt he saw. Later at the jail, he realized the shoes were similar to those worn by the perpetrator in the surveillance video and kept the shoes as evidence rather than allowing the defendant to wear them. Based upon this proof, the trial court found that Detective Crews entered the house at the defendant's request and not for the purpose of conducting a search. Accordingly, the court ruled that the boots were admissible.

A trial court's findings of fact made in relation to a suppression hearing are binding upon this court unless the evidence contained in the record preponderates against them. *State v. Ross*, 49 S.W.3d 833, 839 (Tenn. 2001). Moreover, the trial court, as the trier of fact, is able to assess the credibility of the witnesses, determine the weight and value to be afforded the evidence, and resolve any conflicts in the evidence. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). On appeal the prevailing party is entitled to the strongest legitimate view of the evidence and all reasonable inferences drawn therefrom. *State v. Hicks*, 55 S.W.3d 515, 521 (Tenn. 2001). The defendant, as the nonprevailing party, has the burden of establishing that the evidence contained in the record preponderates against the findings of fact made by the trial court. *Braziel v. State*, 529 S.W.2d 501, 506 (Tenn. Crim. App. 1975). However, this court is not bound by the trial court's conclusions of law. *State v. Simpson*, 968 S.W.2d 776, 779 (Tenn. 1998). We review *de novo* the application of the law to the trial court's findings of fact. *State v. Daniel*, 12 S.W.3d 420, 423 (Tenn. 2000).

"According to both the Fourth Amendment and [A]rticle I, § 7 of the Tennessee Constitution, 'a warrantless search or seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement.'" *See State v. Randolph*, 74 S.W.3d 330, 334 (Tenn. 2002) (quoting *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997)). It is well settled that a search conducted pursuant to a voluntary consent is an exception to the warrant requirement. *State v. Bartram*, 925 S.W.2d 227, 230 (Tenn. 1996)(citing *Schneckloth v. Bustamonte*, 412 U.S.

218 (1973)). The burden of proof rests upon the State to show, by a preponderance of the evidence, that the consent to a warrantless search was given freely and voluntarily. *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968); *see also State v. Ashworth*, 3 S.W.3d 25, 28-29 (Tenn. Crim. App. 1999). An examination of this issue requires a consideration of the totality of the circumstances. *Id*. at 29.

In the instant case, we hold that the evidence does not preponderate against the trial court's determination that, in essence, no search occurred. The defendant was arrested on the front porch after traveling through the house wearing "lounging shorts and nothing else." Detective Crews responded to the defendant's request for shoes and a shirt by entering the otherwise empty house and going to a room that contained only a sleeping cot and the defendant's overnight bag. Detective Crews retrieved the first pair of shoes that he saw, as well as a t-shirt. The evidence does not reveal that Detective Crews searched through the defendant's belongings to any extent. The totality of circumstances reveal that the defendant consented to the entry of the house for the limited purpose of Detective Crews's obtaining a shirt and shoes for the defendant. Accordingly, we affirm the trial court's denial of the motion to suppress.

*Detective Crews's Testimony Concerning Identification*

Next, the defendant argues that the trial court should have excluded Detective Crews's testimony that he believed the person on the surveillance video was the defendant. The defendant contends that this testimony was tantamount to an identification and that it was made without a sufficient basis of familiarity. The State responds that Detective Crews's testimony at trial occurred in the context of questioning regarding the similarity of the boots taken from the house where the defendant was arrested to those seen in the surveillance video and how this similarity motivated Detective Crews to include the defendant in the photographic array. Thus, the State argues the testimony was relevant to show how the investigation became focused on the defendant.

In a pretrial hearing, Detective Crews testified that when he first reviewed the surveillance video, he believed the perpetrator to be the defendant. He said that he was familiar with the defendant because the defendant had recently been released from jail prior to the robbery. He also had seen the defendant at church. More significantly, Detective Crews was familiar with the defendant because "when [the defendant] was up here [in court], there would always be some type of outbursts, and he would stand out in a crowd." Based upon this knowledge of the defendant, he said he immediately recognized the defendant in the surveillance video.

The trial court ruled that Detective Crews would not be allowed to testify that the perpetrator seen in the video was, in fact, the defendant. The court further held, however, that Detective Crews had a sufficient familiarity with the defendant so that he would be allowed to explain how his investigation progressed to the defendant's becoming a suspect.

At trial, Detective Crews testified that he received the surveillance video from Ms. Wells. The trial court sustained the defendant's objection to Detective Crews's narration of the video. When Detective Crews said that he confiscated the boots found at the defendant's arrest because they were similar to those seen in the video, the defendant again objected to Detective Crews's discussion of the video. This time, the trial court ruled the testimony admissible as relevant to the investigation. Detective Crews further testified that "[w]hen [he] watched the video, [he] believed the person in the video was someone that [he] knew as [the defendant]," so he included the defendant in the photographic array.

The questions concerning the admissibility of this evidence rest within the sound discretion of the trial court, and this court will not interfere with the exercise of this discretion in the absence of a clear abuse appearing on the face of the record. *See State v. DuBose*, 953 S.W.2d 649, 652 (Tenn. 1997); *State v. Van Tran*, 864 S.W.2d 465, 477 (Tenn. 1993); *State v. Harris*, 839 S.W.2d 54, 73 (Tenn. 1992). An abuse of discretion occurs when the trial court applies an incorrect legal standard or reaches a conclusion that is "illogical or unreasonable and causes an injustice to the party complaining." *State v. Ruiz*, 204 S.W.3d 772, 778 (Tenn. 2006) (citing *Howell v. State*, 185 S.W.3d 319, 337 (Tenn. 2006)); *see State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999).

In this case, the trial court ruled that the Detective Crews's testimony concerning the defendant's resemblance to the perpetrator seen in the video and the similarity between the shoes worn by the perpetrator in the video to those found at the house where the defendant was arrested was relevant to show how the investigation progressed to the defendant's becoming a suspect. The question remains, however, whether the explanation of the investigation was itself relevant to a material issue. *See* Tenn. R. Evid. 401 (defining relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence"); *id* 402 ("Evidence which is not relevant is not admissible."). We conclude nonetheless that even if the espoused reason for admitting the testimony was inapt, any error in admitting the testimony was harmless. *See*, *e.g*, *State v. Schiefelbein*, 230 S.W.3d 88, 128 (Tenn. Crim. App. 2007) (ruling that error in admission of irrelevant evidence that victim knew of her mother's suspicions that defendant had sexually abused the victim was harmless). In our view, because the jury had an opportunity to view the video and make an independent determination concerning the similarities between the

defendant and the perpetrator shown in the video, the risk of Crews's testimony being misleading or otherwise improper was minimal. Accordingly, we conclude that the trial court did not commit reversible error by admitting the testimony.

*Recusal of Trial Judge*

The defendant argues that the trial judge erred by denying his pretrial motion requesting that the trial judge recuse himself from the trial of this case. The record reveals that following one pretrial hearing concerning counsel's motion to withdraw which was denied by the trial court, the defendant leveled threats to his attorneys and the trial judge outside the presence of the court but within court officers' hearing. Specifically, a court officer reported to the court that the defendant told trial counsel, "If I am convicted you will be sorry you ever defended me." That same day, the defendant was also heard to say, "I will shoot every mother f****** in here." Also within officers' hearing, the defendant stated that the trial judge "need[ed] to be put on his knees and shot in the head." Upon learning this information, the trial court did not allow counsel to withdraw but did, however, appoint additional counsel to assist at trial.

At the next pretrial hearing, the defendant asked the trial judge to recuse himself. The defendant argued that the judge's knowledge of the threats allegedly made by the defendant created an appearance of impropriety and that a reasonable person would question the trial judge's partiality to preside over the trial. The trial court noted that the defendant was "just unhappy with the fact that he's charged with a crime . . . . that things aren't going his way and he's not getting what he wants" concerning the removal of counsel. The judge also said that "if the [c]ourt were to recuse itself . . . every defendant we've got would make these same kind of threats at the judge." The trial judge characterized what had happened as "[j]ust an occupational hazard" and ruled, "I'm confident I can follow the law in doing this case and there's no need for me to recuse in the case."

The issue of a trial judge's recusal based upon alleged bias or prejudice rests within the discretion of the trial court. *Caruthers v. State*, 814 S.W.2d 64, 67 (Tenn. Crim. App. 1991). A judge should grant a motion for recusal whenever his or her "impartiality might reasonably be questioned." Code of Judicial Conduct, Canon 3(E)(1); *see State v. McCary*, 119 S.W.3d 226, 260 (Tenn. Crim. App. 2003). This court will not interfere with the trial court's discretion unless clear abuse appears on the face of the record. *Owens v. State*, 13 S.W.3d 742, 757 (Tenn. Crim. App. 1999); *Caruthers*, 814 S.W.2d at 67.

In the present case, the trial judge described the defendant as "just unhappy." He stated that he did not take seriously the defendant's statements and minimized their impact by characterizing them as "an occupational hazard." Furthermore, the trial judge said that he could follow the law and remain impartial. The record is devoid of any showing that the trial court committed a clear abuse of discretion in this case. Accordingly, we affirm the ruling of the trial court denying the defendant's motion to recuse.

*Mistrial*

The defendant contends that the trial court erroneously denied his requests for mistrial made when (1) the State said in opening statements that Detective Crews reviewed the surveillance video and believed the perpetrator to be the defendant, (2) Detective Crews testified on direct examination that he reviewed the video and believed the perpetrator to be the defendant, and (3) the State argued during its closing surrebuttal argument that Detective Crews reviewed the video and believed the defendant to be the perpetrator seen in the video. The State contends that the trial court properly denied the motions for mistrial because Detective Crews's testimony was properly admitted at trial.

The decision to grant or deny a mistrial is entrusted to the sound discretion of the trial court. *See State v. Nash*, 294 S.W .3d 541, 546 (Tenn. 2009); *State v. McKinney*, 929 S.W.2d 404, 405 (Tenn. Crim. App. 1996). Accordingly, this court will disturb the trial court's ruling in this regard only when there has been an abuse of the trial court's discretion. *See Nash*, 294 S.W.3d at 546; *State v. Adkins*, 786 S.W.2d 642, 644 (Tenn. 1990). An abuse of discretion occurs when the trial court applies an incorrect legal standard or reaches a conclusion that is "illogical or unreasonable and causes an injustice to the party complaining." *State v. Ruiz*, 204 S.W.3d 772, 778 (Tenn. 2006) (citing *Howell v. State*, 185 S.W.3d 319, 337 (Tenn. 2006)); *see also State v. Shirley*, 6 S .W.3d 243, 247 (Tenn. 1999).

"Normally, a mistrial should be declared only if there is a manifest necessity for such action." *State v. Saylor*, 117 S.W.3d 239, 250 (Tenn. 2003) (citing *State v. Millbrooks*, 819 S.W.2d 441, 443 (Tenn. Crim. App. 1991)). "'In other words, a mistrial is an appropriate remedy when a trial cannot continue, or a miscarriage of justice would result if it did.'" *Saylor*, 117 S.W.3d at 250 (quoting *State v. Land*, 34 S.W.3d 516, 527 (Tenn. Crim. App. 2000)). "The purpose for declaring a mistrial is to correct damage done to the judicial process when some event has occurred which precludes an impartial verdict." *State v. Williams*, 929 S.W.2d 385, 388 (Tenn. Crim. App. 1996). The burden of establishing the necessity for mistrial lies with the party seeking it. *Id.* "In making the determination whether

a mistrial is warranted, 'no abstract formula should be mechanically applied[,] and all circumstances should be taken into account.'" *Nash*, 294 S.W.3d at 546 (quoting *State v. Mounce*, 859 S.W.2d 319, 322 (Tenn. 1993) (internal quotation marks and citation omitted)).

We cannot discern any basis to conclude that the trial court committed an abuse of discretion in denying the defendant's requests for mistrial or that prejudice to the defendant resulted from the comments made by the prosecutor. As such, the defendant failed to show any manifest necessity requiring a mistrial in this case.

*Sufficiency of the Evidence*

The defendant argues that the evidence is insufficient to support his conviction of aggravated robbery because identification was an issue in this case, and, the defendant claims, all evidence concerning his identification was improperly admitted at trial. The State contends that the evidence sufficiently established the defendant's guilt beyond a reasonable doubt.

We review the defendant's claim attacking the sufficiency of the evidence to support his convictions mindful that our standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *State v. Winters*, 137 S.W.3d 641, 654 (Tenn. Crim. App. 2003). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *Winters*, 137 S.W.3d at 654.

When examining the sufficiency of the evidence, this court should neither re-weigh the evidence nor substitute its inferences for those drawn by the trier of fact. *Winters*, 137 S.W.3d at 655. Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Significantly, this court must afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id*.

A conviction for aggravated robbery requires proof that the defendant

-10-

committed a robbery which is defined as "the intentional or knowing taking of property from the person of another by violence or by putting the person in fear." T.C.A. § 39-13-401. In addition, as relevant to this case, the robbery must be "accomplished with a deadly weapon." *Id.* § 39-13-402(a)(1).

The proof presented at trial showed that the defendant entered the Kangaroo Market, forced his way behind the counter, brandished a knife, and demanded money from the cash register. Mr. Dickerson, the night clerk, testified that he was afraid when the defendant pulled the knife from behind his back and demanded the money. Mr. Dickerson identified the defendant from a photographic lineup within days of the incident. Mr. Dickerson identified the defendant at trial as the perpetrator. Shoes brought from the home where the defendant was arrested matched those worn by the perpetrator in the surveillance video from the market. We conclude that the evidence is sufficient to support the conviction of aggravated robbery in this case.

*Sentencing*

In his final issue, the defendant challenges the trial court's imposition of a consecutive sentence in this case. Citing *State v. Wilkerson*, 905 S.W.2d 933, 937 (Tenn. 1995), he argues that, although the trial court imposed a consecutive sentence based upon the defendant's probationary status at the time this offense was committed, the court "[e]ffectively . . . imposed consecutive sentencing on the basis that the [d]efendant was a dangerous offender, without having to make the appropriate findings for that category." The State responds that the trial court properly ordered the aggravated robbery sentence to be served consecutively to the prior sentences for which the defendant was on probation, *see* T.C.A. § 40-35-115(b)(6), and that this basis alone justified consecutive sentencing in this case. Moreover, the State argues that the trial court did indeed make further findings concerning the severity of the offense and the need to protect society from the defendant's criminal conduct, despite these considerations not being requisites to the application of Code section 40-35-115(b)(6).

When considering challenges to the length and manner of service of a sentence this court conducts a de novo review with a presumption that the determinations of the trial court are correct. T.C.A. § 40-35-401(d)(2006). This presumption, however, "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). The appealing party, in this case the defendant, bears the burden of establishing impropriety in the sentence. T.C.A. § 40-35-401, Sentencing Comm'n Comments; *see also Ashby*, 823 S.W.2d at 169. If our review of the sentence establishes that

-11-

the trial court gave "due consideration and proper weight to the factors and principles which are relevant to sentencing under the Act, and that the trial court's findings of fact . . . are adequately supported in the record, then we may not disturb the sentence even if we would have preferred a different result." *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). In the event the record fails to demonstrate the required consideration by the trial court, appellate review of the sentence is purely de novo. *Ashby*, 823 S.W.2d at 169.

> In making its sentencing decision, the trial court was required to consider:
>
> (1) The evidence, if any, received at the trial and the sentencing hearing;
>
> (2) The presentence report;
>
> (3) The principles of sentencing and arguments as to sentencing alternatives;
>
> (4) The nature and characteristics of the criminal conduct involved;
>
> (5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40–35–113 and 40–35–114;
>
> (6) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

T.C.A. § 40–35–210(b). The trial court should also consider "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant . . . in determining the sentence alternative or length of a term to be imposed." *Id.* § 40-35-103(5).

In the instant case, the defendant conceded that he was on probation at the time of the offense but asked the court to impose a concurrent sentence. The trial court, unpersuaded by his plea, imposed a consecutive sentence based upon the defendant's probationary status at the time the aggravated robbery was committed. *See* T.C.A. § 40-35-115(b)(6); Tenn. R. Crim. P. 32(c)(2). The trial court further found that "a consecutive sentence is necessary to protect society and is reasonably related to the severity of the

offenses."

We agree with the State that the trial court was not required to make any findings relative to the severity of the offenses and need to protect society as a prerequisite to applying Code section 40-35-115(b)(6). Although these findings are required in the context of a dangerous offender finding, *see id.* § 40-35-115(b)(4), they are not necessary to the imposition of consecutive sentences based upon a defendant's probationary status at the time the sentencing offense was committed. Nevertheless, we conclude that the record supports the trial court's imposition of a consecutive sentence based upon the defendant's being on probation when he committed the aggravated robbery in this case. Any argument raised by the defendant that the trial court "effectively" imposed the dangerous offender consecutive sentencing factor found at Code section 40-35-115(b)(4) lacks merit.

*Conclusion*

Discerning no reversible error, the judgment of the trial court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE

-13-